(35 Misc. Rep. 1.)

### JOHN P. KANE CO. v. KINNEY et al.

(Supreme Court, Special Term; New York County. May, 1901.)

1. SUBCONTRACTOR'S LIEN—ASSIGNMENT FOR BENEFIT OF CREDITORS.
    Where mechanics' liens are filed within the statutory time by subcontractors, they are not deprived of their rights thereunder by an assignment for benefit of creditors by the contractor prior thereto; but, where the owner owed the contractor sufficient money to satisfy the liens at the time of the assignment, the assignee can pay them before applying the assets to the general debts.
2. SAME—FILING ASSIGNMENT.
    Laws 1897, c. 418, § 15, declaring that no assignment of a building contract, or of money due thereunder, shall be valid until the contract of assignment, or a copy thereof, is filed with the county clerk of the county where the property is situated, does not apply to a general assignment of the contractor for the benefit of creditors.

Action by the John P. Kane Company against Francis S. Kinney and others to foreclose a mechanic's lien. Decree for plaintiff and certain of the defendants.

J. Woolsey Shepard, for plaintiff.

Lord, Day & Lord, for defendant Charles N Talbot, as assignee, etc.

William D. Peck, for defendant Clarence L. Smith.

George V. Brower, for defendant Childs.

LEVENTRITT, J. This is an action to foreclose mechanics' liens, and involves the determination of priority between lienors and a general assignee of the contractor for the benefit of creditors. The material facts are as follows: The defendant Robinson, a contractor, entered into an agreement for the construction of a building with the defendant Kinney, the owner of the property against which the liens were filed. The plaintiff and the defendants Smith and Childs were material men under contract with the defendant Robinson. On the 7th day of March, 1900, Robinson executed and delivered a general assignment for the benefit of creditors to the defendant Talbot, who duly accepted and acknowledged it. On the following day,—the 8th of March,—before the assignment was recorded in the office of the county clerk, the plaintiff and the defendant Smith filed in that office their notices of mechanics' liens, and within an hour after the recording of the assignment the defendant Childs filed his notice of lien. It is not disputed that all the liens

were filed within the statutory period of 90 days after the completion of the work, nor is any attack made against them except on the ground that at the time they were filed there was no property left on which they could fasten. It is conceded that on the day of the delivery of the assignment there was due by the owner to the contractor a sum in excess of the three liens embraced in this suit. The claims of the several parties may be briefly summarized: The assignee insists. upon his right to the entire fund under an assignment delivered prior to the filing of the first and second liens, although recorded thereafter, on the theory that it was effective, from the date of its delivery, to pass title to him of all moneys due or to become due upon the building contract, and that, therefore, there being nothing due or to become due to the contractor from the owner, but only to him as assignee, when the notices of liens were filed, these were ineffectual. The plaintiff and the defendant Smith maintain that the assignment to Talbot did not vest in him any rights superior to those of the lienors, for the reasons that the provisions of section 15 of the lien law (Laws 1897, c. 418) were violated, in that there were not filed in the office of the county clerk copies of the contract and of the assignment. Finally, the defendant Childs contends that, irrespective of section 15 of the lien law, a general assignment for the benefit of creditors does not operate to cut off the right of material men to file mechanics' liens within the period allowed by statute.

Were my conclusions dependent solely on the construction to be given to section 15 of the lien law, I should hold that it has no applicability to the case of a general assignment for the benefit of creditors. The section reads:

"No assignment of a contract for the performance of labor or the furnishing of materials for the improvement of real property or of the money or any part thereof due or to become due therefor, nor an order drawn by a contractor or subcontractor upon the owner of such real property for the payment of such money shall be valid, until the contract or a statement containing the substance thereof and such assignment or a copy of each or a copy of such order, be filed in the office of the county clerk of the county wherein the real property improved or to be improved is situated, and such contract, assignment or order shall have effect and be enforceable from the time of such filing."

On its face nothing could be broader. Kenyon v. Walsh, 31 Misc. Rep. 634, 66 N. Y. Supp. 35. No assignment of the money due under a contract is valid until the contract under which the work is done and the instrument of assignment are duly filed. If the "no assignment" includes a general one for the benefit of creditors, then all the liens would have priority over the claim of the assignee, as, concededly, no copy of the contract was filed, either before or after any of the liens was acquired. The proper construction of this section, however, forbids such inclusion. An ordinary assignment and one for the benefit of creditors have nothing in common save a partial similarity of name. Each belongs to an entirely different group of contracts, and, disregarding words, and considering merely the idea, two entirely unrelated concepts result. To constitute an assignment for the benefit of creditors, there must

be voluntary transfer by a debtor of all his property to an assignee for the payment of his debts (3 Enc. Pl. & Prac. 6), and in this state the assignee is simply a trustee, and not the absolute owner. "The material and essential characteristic of a general assignment is the presence of a trust. The assignee is merely trustee, and not absolute owner. He buys nothing and pays nothing, but takes the title for the performance of trust duties." Brown v. Guthrie, 110 N. Y. 435, 441, 18 N. E. 254, 255. Such an assignment is not within the purview of the mechanic's lien law. Special mention of that class of transfer when provision is made in reference to it in other parts of the statute indicates the propriety of its exclusion in the section under consideration. Sections 4, 13. The development of decision and legislation clearly show the purpose the legislature had in view, and therefore the proper construction to be placed upon the statute. The section under consideration was first incorporated into the lien law, substantially in its present form, by chapter 915 of the Laws of 1896, which amended section 5 of chapter 342 of the Laws of 1885. Prior to the amendment, the courts had often been called upon to decide whether the assignment of a contract, or of the moneys to grow due thereunder, or whether an order for the payment of money to be charged against a building contract, had validity as against liens subsequently filed. The decisions were uniformly against the lienors. Lauer v. Dunn, 115 N. Y. 406, 22 N. E. 270; McCorkle v. Herrman, 117 N. Y. 297, 22 N. E. 948; Stevens v. Ogden, 130 N. Y. 182, 29 N. E. 229; Beardsley v. Cook, 143 N. Y. 143, 38 N. E. 109; Bates v. Bank, 157 N. Y. 322, 51 N. E. 1033. In Lauer v. Dunn, where a contractor drew an order on the owner in favor of the subcontractor, and there were no further formalities, it was held to operate as an assignment pro tanto of the funds in the owner's hands; and the rule was laid down that, where a contractor had assigned his interest in the fund "in good faith, and for a valuable consideration," in payment of the claim of a subcontractor, the owner having been notified, no subsequent liens could operate to charge the latter with any further liability. In McCorkle v. Herrman, supra, which involved the question of priority between a receiver of the judgment creditor of the contractor and a lienor under him who had filed his notice of lien subsequent to the service of the order in supplementary proceedings, the court stated more elaborately than had been done theretofore the reasons for the rule denying a preference to the lienor in such cases:

"The filing of the notice originates the lien. Anterior to this act the laborer or material man has no preferential right to be paid for his labor or material out of the sum which is due from the owner of the building to the contractor, but stands in the same position as other creditors. He may subject the debt to a lien in his favor on filing the notice and taking the proceeding prescribed by the act. But if, before this has been done, other creditors, pursuing the usual remedies for the collection of debts, have acquired a legal or equitable right to have the debt applied in satisfaction of their claims, the right is not overreached by liens subsequently filed under the act, unless priority is given by the provisions of the act itself."

The court adopted the reasoning in Payne v. Wilson, 74 N. Y. 348, to the effect that the lienor acquired a specific lien at the time he

filed his notice; that up to that time he was merely a general creditor, with no greater equities than other general creditors; and that he was, therefore, bound by all equities existing in favor of those dealing with his debtor. In Stevens v. Ogden, supra, an order drawn by the contractor in favor of a creditor, and accepted in payment, took priority over a lien subsequently filed. No debt was declared to be owing by the owner when the lien was filed, the order having operated as an assignment pro tanto of the fund due or to become due to the contractor. "There is no provision in the statute forbidding a contractor to pay his creditors out of the money due or to become due him from the owner to the exclusion of laborers and material men who have not filed liens. This may be an omission, but, if so, it can only be supplied by the legislature, for the courts cannot extend these purely statutory rights beyond the terms of the statute by which they are created." Page 187, 130 N. Y., and page 230, 29 N. E.

These cases are typical. It is unnecessary to cite further instances, of which there are many. However sound their reasoning, it soon became obvious that the construction they gave to existing laws often tended to defeat the beneficial purpose of the mechanic's lien statutes, and that the rules they laid down pointed a way for unscrupulous contractors to enter into fraudulent and collusive schemes to the detriment of those whom the lien laws were primarily designed to protect. Underlying the first mechanic's lien law (Laws 1830, c. 330), and subsequent legislation enlarging its scope, is the principle that, where a person has by his labor, or by the material he has furnished, contributed to, or enhanced the worth of, real property, he should be declared to have an interest in the property to the extent of this value. The decisions cited induced the legislature to make in one particular, at least, the intended protection to prospective lienors more effective. Hence the requirements of chapter 915 of the Laws of 1896, now embodied in section 15 of the revision of 1897. Inasmuch as a contractor might, without any knowledge on the part of those who have contracted for work under him, dispose by order or special assignment of every dollar due or to become due to him from the owner, with the single qualification that the assignment must be bona fide, and for value, so that the subsequent lien of the innocent material man, instead of fastening onto substantial property, would be dissipated into thin air, the legislature declared, before such an assignment or order could have validity against a subsequent lienor, it would have to be recorded. The effect of the enactment is to advise at any moment those doing work of the condition of affairs. The filing of the original contract shows the entire amount of the contract, the time and terms of payment, and informs the subcontractor or the material man of the amount of the fund which represents the maximum interest he can acquire in the property. The filing of the assignment or order indicates the extent to which the fund is or has been depleted and the amount of equity left in the contractor, and thus enables the subcontractor or material man to take such steps for the protection of his rights as he may be advised. Without en-

larging further, I believe the foregoing outline sufficiently estab-
lishes the proposition, with which I prefaced this review,—that the
assignment contemplated in section 15 is a special assignment for
value, and does not include a general one for the benefit of cred-
itors, and the assignment of moneys to grow due, which is to be
recorded, is the specific one of moneys under the building contract,
and does not include those that are carried to the assignee for
creditors by virtue of his taking title to all his assignor's property.

Independently of the authorities cited and the course and pur-
pose of the legislation adverted to, a general assignment for the
benefit of creditors could not be embraced within the language or
object of section 15. If that section means anything, it means
that assignments otherwise valid to cut off subsequent liens shall
be invalid unless certain formalities are complied with. But I
am of opinion, and such authority as there is supports the view,
that a general assignment for the benefit of creditors is not other-
wise valid to cut off subsequent liens; in other words, that in no
event does the execution, delivery, and recording of such an as-
signment take precedence over the rights of those who subsequently,
and within the statutory period, duly file their notices of lien. In
re Manufacturing Co., 15 Misc. Rep. 588, 36 N. Y. Supp. 923; Read-
ing Hardware Co. v. City of New York, 27 Misc. Rep. 450, 59 N. Y.
Supp. 253; Mandeville v. Reed, 13 Abb. Prac. 173; Smith v. Baily,
8 Daly, 128; Henderson v. Sturgis, 1 Daly, 336; Oates v. Haley,
Id. 338; McMurray v. Hutcheson, 59 How. Prac. 210; Boisot, Mech.
Liens, §§ 346, 347; Bish. Insolv. § 277. And see Supplies Co. v.
Jones, 58 App. Div. 231, 68 N. Y. Supp. 806. It must not be lost
sight of that the lien of the subcontractor or material man is not
asserted against the contractor, nor even against the owner, but
against property. Lien Law, § 3. The agreement between the sub-
contractor and the contractor on the one hand, and between the
contractor and the owner on the other, determine the extent to
which the lien can be enforced; but its enforcement as a lien, so
far from being sought against either, is directed against the land
and the building, and that because a certain portion of their value
represents the labor of, and the materials contributed by, the sub-
contractor. The contractor failing to pay his contract debt, the
subcontractor is allowed by statute to enforce his rights against
the property improved, to the extent, as it were, of taking out what
he has put in it. This right rests on no privity of contract with
the owner, for there is none, but is a statutory privilege, the grant-
ing of which was prompted by broadly equitable considerations.
The subcontractor declares his intention of availing himself of that
statutory right by filing his notice of lien. That done, the prop-
erty at once becomes answerable for its satisfaction, with the
single limitation that the amount then remaining due the contractor
by the owner is the measure of the burden. If that amount has
been reduced by an assignment of moneys by the contractor, or
by some diligent general creditor securing title to a portion thereof,
there is left so much less property to be reached by the lien. It
must be perfectly obvious, however, that that particular amount,

or the property represented by it, is in no wise lessened by an assignment for the benefit of creditors. The whole, whether in terms of money or property, remains. The assignee is a trustee simply, and has only the assignor's title; nothing more. He has paid or parted with nothing. The equities existing against his assignor bind him; and, if any surplus should result, it is not his, but his assignor's. Whether he receives any money as due his assignor on the building contract is dependent on the same contingency,— that there be a surplus after liens filed within the statutory period have been satisfied. The lienor is not, in his capacity of lienor, a general creditor of the contractor. Strictly speaking, he is not his contractor's preferred creditor. He has a preferential statutory right against property of a third person or its money equivalent. All that the contractor, and, ergo, the assignee, can get, is the amount left over after the property has answered to the lienor. The argument of the assignee here is based on the case of McCorkle v. Herrman and kindred authorities, supra, while the lienors, apparently accepting the assignee's construction of that case, seek refuge under the provisions of section 15, already referred to. It is clear to me, however, that McCorkle v. Herrman has no application to the case of a general assignment for the benefit of creditors. I have found no case in which a preference was given to an assignee over a subsequent lienor where the assignment was not for value. That, to my mind, is the distinguishing feature. A lienor gets nothing until he files his notice. Up to that time he is merely a general creditor with other general creditors. If the interest he seeks to reach is lessened by the time he asserts his preferential right by an assignment for value he can reach only what is left. And this is the extent to which the cases have gone. The McCorkle Case declared "creditors pursuing the usual remedies for the collection of debts" to have priority where they have acquired a legal or equitable right to have the debt applied in satisfaction of their claims. In Lauer v. Dunn, supra, the priority given to the assignment was predicated on "good faith and for a valuable consideration." In Stevens v. Ogden, supra, the right to pay "creditors" out of moneys due under a contract before liens are filed was recognized. So in Bates v. Bank, supra, where there was an assignment to a creditor pro tanto, and so in all the other cases I have been able to find. On the other hand, there have been some decisions, under every important lien law since the first, recognizing the priority of a lien duly filed over a general assignment antedating it. Thus, in Mandeville v. Reed, supra, decided under the Laws of 1830, it was held that a mechanic who had performed labor for the contractor upon the building can as well after as before an assignment for the benefit of creditors acquire a right to be paid the amount due him. So, too, in Henderson v. Sturgis, supra, decided under the Laws of 1851, the same priority is declared to exist; while in Oates v. Haley, supra, a general assignment for the benefit of creditors is recognized as the sole exception to the general rule contended for by the assignee in this case. In McMurray v. Hutcheson, supra, decided under the Laws of 1875, as amended in 1879, priority was

awarded to a subcontractor filing a lien after an assignment for the benefit of creditors, and he was declared not to be compelled to share only in the general fund for the benefit of all creditors. In Re Manufacturing Co., supra, arising under the Laws of 1885, Mr. Justice Beekman, in a convincing opinion, gave preference to a lienor of a subcontractor—a corporation, of which a receiver had been appointed in proceedings instituted for voluntary dissolution— over the receiver, although the latter's appointment antedated the filing of the lien. There is sufficient analogy between a receiver in such a case and a general assignee to make the argument there advanced applicable. Finally, in Reading Hardware Co. v. City of New York, supra, Mr. Justice Werner, then sitting in this department, held that, inasmuch as the lien was asserted, not against the property of an insolvent in the hands of an assignee, but against the property of another, with whom the insolvent had contracted, the lien, although filed several weeks after the general assignment was recorded, should have preference.

I am thus led to the conclusion that all the liens in this case have priority over the claims of the assignee. The lienors have a superior title, and the amount of their liens must be first satisfied before any surplus can be turned over into the trust estate to be administered for the benefit of all the general creditors. It may be observed that, in view of the recent opinion in Supplies Co. v. Jones, supra, some question may exist of awarding any judgment whatsoever in favor of the assignee. Submit a decision in the usual form directing a foreclosure to the extent of the lien of the plaintiff and of those of the defendants Smith and Childs.

Ordered accordingly.