EDISON ELECTRIC ILLUMINATING COMPANY OF BROOKLYN, Plaintiff, *v.* HORACE E. FRICK COMPANY, Defendant, PEOPLE'S NATIONAL BANK OF LEBANON, PENNSYLVANIA, Appellant, and NATIONAL BRIDGE WORKS et al., Respondents, Impleaded with Others.

Statutory construction — part of a statute should not be construed by itself, but in connection with the context, and, if practicable, with the origin and purpose of the statute — mechanics' liens — requirement that assignment of moneys due on a contract should be filed in the proper county clerk's office — what creditors may not invoke such provision.

1. A clause in a statute ought not to be interpreted by itself wholly detached from the statute of which it is a portion. The origin and purpose of the entire statute should be considered, and especially, if they are known and open to consideration, the origin and purpose of the particular provision which is to be construed.

2. Section 15 of the Lien Law relating to mechanics' liens (Cons. Laws, ch. 33), in effect providing that an assignment by a contractor of sums of money due or to grow due upon his contract shall be invalid unless filed in the office of the clerk of the county where the real property is situated, cannot be invoked for the benefit of one having a judgment against the contractor for damages for personal injuries or an attaching creditor of such contractor.

*Edison El. Illuminating Co.* v. *People's Nat. Bank,* 158 App. Div. 950; 160 App. Div. 903, reversed.

(Argued March 16, 1917; decided May 8, 1917.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 20, 1914, modifying and affirming as modified a judgment entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Walter H. Bond* for appellant. The unrecorded assignments of the Horace E. Frick Company to the People's National Bank of moneys due and to become due, are valid as against every one other than lienors under and by virtue of the Lien Law; *a fortiori* as to the respondents who contributed nothing to the creation of the fund in controversy, and whose judgments were obtained long after the giving of the said assignments and the advancing of money thereon. (*McCorkle* v. *Herrman*, 117 N. Y. 297; *Bates* v. *Salt Springs Nat. Bank*, 157 N. Y. 32; *Niles* v. *Mathusa*, 162 N. Y. 546; *Williams* v. *Ingersoll*, 89 N. Y. 508; *Columbian Bank* v. *Equitable Assn.*, 61 App. Div. 594; *Van Kannel Revolving Door Co.* v. *Astor*, 119 App. Div. 214; *White* v. *Livingston*, 69 App. Div. 369; *Young* v. *Upson*, 115 Fed. Rep. 192; *MacDonald & Graham* v. *Kneeland & Luddington*, 5 Minn. 352; *Copeland* v. *Manton*, 22 Ohio St. 398; Endlich on Interp. of Statutes, §§ 113–127; *Davis* v. *Davis*, 75 N. Y. 221; *Dean* v. *M. E. A. Co.*, 119 N. Y. 540, 547; *Henavie* v. *N. Y. Co.*, 154 N. Y. 278.) Liens of a judgment tort creditor and of an attaching creditor are not contemplated by the Lien Law, and the claims of the respective parties to the fund in question should be adjudicated by the principles of the common law. (*McCorkle* v. *Herrman*, 117 N. Y. 287; *Mulstein* v. *City of New York*, 213 N. Y. 308; *Riverside Cont. Co.* v. *City of New York*, 218 N. Y. 596; *Van Kannel R. D. Co.* v. *Astor*, 119 App. Div. 214; *Bates* v. *S. S. Nat. Bank*, 157 N. Y. 323; *Smith* v. *T. & P. Ry. Co.*, 39 S. W. Rep. 969.)

*Charles D. Miller* for John V. Lindberg, respondent. The alleged assignments are invalid as against the defendant Lindberg because not filed pursuant to section 15 of the Lien Law. (*Kane* v. *Kinney*, 174 N. Y. 69; *Harvey* v. *Brewer*, 178 N. Y. 7; *Burrett* v. *Schaefer, Jr., & Co.*, 162 App. Div. 52; *Smith & Co.* v. *Douglas*, 165 App. Div. 707; *A. P. & C. Co.* v. *City of New York*, 218 N. Y. 686; *Van Kannel R. D. Co.* v. *Astor*, 119 App. Div. 214; *Kenyon* v. *Walsh*, 31 Misc. Rep. 634; *Tooker* v. *Arnoux*, 76 N. Y. 397; *Weeks* v. *O'Brien*, 141 N. Y. 199; *Reining* v. *City of Buffalo*, 102 N. Y. 308.)

*John A. Thompson* for National Bridge Works, respondent. The assignments from the Frick Company to the bank not having been filed in accordance with section 15 of the Mechanics' Lien Law are invalid and unenforcible, at least as against National Bridge Works, an attaching creditor. (*McCorkle* v. *Herrman*, 117 N. Y. 297; *Hermann & Grace* v. *City of New York*, 136 App. Div. 28; *Uvalde A. P. Co.* v. *City of New York*, 191 N. Y. 244; *Mulstein Co.* v. *City of New York*, 213 N. Y. 308; *Barrett* v. *Schaeffer*, 162 App. Div. 52; 217 N. Y. 722.)

Hiscock, Ch. J. This action was brought by plaintiff for the purpose of procuring a determination of opposing claims to a fund produced under a building contract. While various other issues between the parties to this appeal were litigated upon the trial and are discussed upon this appeal, we are all agreed that after the reversal by the Appellate Division of various findings made by the trial court and upon the new findings made by the former court there only remains for our consideration one question. That question is the one whether section 15 of the law relating to mechanics' liens, in effect providing that an assignment by a contractor of sums of money due or to grow due upon his contract shall be invalid unless filed

in the office of the clerk of the county where the real property is situated, can be invoked for the benefit of one having a judgment against the contractor for damages for personal injuries or an attaching creditor of such contractor. The courts below have held that it may be so invoked. We reach a different conclusion.

The decisive facts, in addition to merely formal ones, which present this question, are as follows:

The defendant Frick Company made a contract with the plaintiff for the construction of certain improvements. Before completion of this contract it became insolvent and defaulted, but after completion of the contract at its expense there remained due to it from the plaintiff on account of said contract the sum of about $6,000, and which is the fund in dispute. Before any default this company made an agreement with the appellant bank, providing for the advancement to it by the latter of moneys with which to carry on its business, and agreed that from time to time it would assign to the bank moneys due to it upon contracts as security for the payment and satisfaction of said loans. The bank advanced moneys which were wholly or largely used in carrying on the contract here involved, and subsequently and in accordance with its agreement the Frick Company executed to the bank assignments of moneys due under said contract sufficient to exhaust the entire fund now on hand. These assignments were never filed in the office of the county clerk.

The respondent Lindberg was an employee of the Frick Company, and subsequent to the execution of the assignments above referred to he recovered a judgment against it for damages for personal injuries caused by its negligence, on which, after return of execution unsatisfied, supplementary proceedings were instituted.

The respondent National Bridge Works furnished supplies to the Frick Company, which were used to some extent in carrying on the contract already referred to,

but it took notes for its indebtedness and after the execution of the assignments to appellant it brought action upon these notes and obtained attachments under which it attempted to secure a levy and lien upon the fund already referred to.

The section under which respondents urge that appellant's assignments, because not filed in the clerk's office, were invalid as to them is section 15 of the Lien Law (Cons. Laws, ch. 33), which reads as follows: "No assignment of a contract * * * or of the money, or of any part thereof due or to become due therefor, * * * shall be valid, until * * * such assignment * * *. be filed in the office of the county clerk of the county wherein the real property * * * is situated * * *."

Indisputably, the assignments to appellant gave rights to the fund in question which were superior to any acquired by respondents unless such result was prevented by the statute which has been quoted.

Neither of the respondents occupies the position of a laborer or materialman having furnished labor or materials toward the improvement producing the fund, for which any lien on said fund exists under the Lien Law. Lindberg's claim could never have served as the basis for such a lien and while apparently the Bridge Works furnished material for which it might have had a lien, that right has been lost and it occupies the position of an ordinary contract creditor with an attachment. Nevertheless, if the language of the provision in question were to be construed and interpreted simply by itself, it is broad enough to sustain respondents' claim that it protects them, for there is therein no specification or limitation of the persons who may take advantage of it and defeat an assignment as invalid because it has not been filed. But clearly we ought not to thus interpret this clause by itself and wholly detached from the statute of which it is a portion. We ought to consider the origin

and purpose of the entire statute; and especially we ought to consider (if they are known and open to our consideration) the origin and purpose of the particular provision which we are interpreting. (*People ex rel. Collins* v. *Spicer*, 99 N. Y 225, 233; *People ex rel. Earl* v. *England*, 16 App. Div. 97, 100; *Holy Trinity Church* v. *U. S.*, 143 U. S. 457, 463.)

There is no doubt about the origin and general purpose of the statute as an entirety. We know from its provisions, from what has been said of its objects in many opinions and from the title of the comprehensive statute, predecessor of the present one, adopted in 1885 (L. 1885, ch. 342), that the act was passed for the protection of laborers and materialmen who had contributed their labor and materials toward the construction of some improvement, and to give them a lien for their pay upon funds which were the fruits of their contributions. Not even these persons acquired liens unless they complied with certain rules in perfecting and enforcing the same, and certainly the general purpose of the statute was not to protect persons who became possessed of claims in tort against the contractor or persons who occupied the position of ordinary contract creditors, no matter how meritorious these classes of claims might be and no matter how much the latter might have contributed to the improvement. And we may go even further in this line of consideration. Although the statute was thus intended to and did afford certain protection to a creditor of the classes specified by giving a lien upon moneys due under the contract, it was entirely possible that he might be, and in fact it often happened that he was, defeated in his attempts to pursue this relief through prior and secret assignments by the contractor of moneys due or to grow due on the contract, and the legislature set out to guard against this particular danger. Commencing as far back as 1896 (L. 1896, ch. 915, § 5), there was a provision which finally developed into the present section 15, which has

been quoted, intended to prevent this defeat of the meritorious claims generally provided for in the act by a requirement that assignments of moneys due on the contract should be made public by filing them and punishing the failure thus to make them public by a declaration of invalidity. In *Harvey* v. *Brewer* (178 N. Y. 5, 7) it was said in respect of this section: "This section is supposed to be due to a decision of this court in *Bates* v. *Salt Springs Natl. Bank* (157 N. Y. 322), holding that in the absence of anything to the contrary in the contract, and before any notice of mechanic's lien is filed, the contractor may assign to his creditor in payment of his debt the whole or any portion of the moneys due or to become due under the contract, and the assignee acquires a preference over a subsequent lienor. * * * That section indicates that the legislature was of the opinion that the protection of the laborers and materialmen made it necessary that notice of an assignment of the contract or the moneys due thereunder or some part thereof, or an order drawn by a contractor upon the owner, ought to be given to those interested, and so it was provided that such an assignment or order should not be valid 'until the contract or a statement containing the substance thereof and such assignment or a copy of each or a copy of such order be filed' in the proper county clerk's office." (*Kane Co.* v. *Kinney*, 35 Misc. Rep. 1, 5; affd., 174 N. Y. 69; *Brace* v. *City of Gloversville*, 167 N. Y. 452, 456; *Armstrong* v. *Chisolm*, 99 App. Div. 465, 469; *Van Kannel R. Door Co.* v. *Astor*, 119 App. Div. 214.)

It thus appears that the legislature adopted a statute for the protection of certain classes of creditors, which do not include the respondents, and that they inserted therein the special provision under consideration for the purpose of filling a gap in the statute and for the purpose of preventing the defeat of the beneficial purposes secured by other provisions of the statute through certain definite evils. It recognized that it was useless to give to a

laborer or materialman the right to file a lien upon a fund if the contractor could defeat all practical benefits of this right by making a secret assignment of the fund, and hence the requirement that such assignments should be filed. During all of this process it is beyond dispute that the general purpose of the legislative mind was to protect certain classes and that this particular clause was passed to make such protection more perfect. Keeping this in mind and construing the language of section 15 in the light of the general purpose of the statute, it seems to us evident that the language rendering assignments invalid is to be limited by the purpose for which the provision was adopted and that it should be held to relate simply to the people contemplated by the statute and should not be held to apply for the benefit of those, like the present respondents, who were not in the mind of the legislature at all.

We think that this view is sustained by the following authorities: *Matter of Meyer* (209 N. Y. 386); *Holy Trinity Church* v. *U. S.* (*supra*); *Lake Shore & M. S. R. Co.* v. *Roach* (80 N. Y. 339, 344); *Delafield* v. *Brady* (108 N. Y. 524, 529); *Riggs* v. *Palmer* (115 id. 506, 509, 510).

In the *Holy Trinity Church* case it was contended that a statute made a certain act a misdemeanor, and it was said: "The construction invoked cannot be accepted as correct. It is a case where there was presented a definite evil, in view of which the legislature used general terms for the purpose of reaching all phases of that evil, and thereafter, unexpectedly, it is developed that the general language thus employed is broad enough to reach cases and acts which the whole history and life of the country affirm could not have been intentionally legislated against. It is the duty of the courts, under those circumstances, to say that, however broad the language of the statute may be, the act, although within the letter, is not within the intention of the legislature, and, therefore, cannot be within the statute." (p. 472.)

The judgments of the Special Term and Appellate Division should be reversed in so far as the same dismiss appellant's claim against the fund herein and direct payment therefrom of the respective claims of the respondents, and also in so far as they award judgment in favor of said respondents respectively and against appellant for the sum of $79.06 and $269.36 for expenses of the reference.

Judgment is further granted that appellant's claims herein be paid from the balance of said fund now on hand in priority to respondents' claims, and that appellant have costs in this court against said respondents, which in addition shall include the taxation against each respondent of one-third of the disbursements incurred in printing the record on appeal in the Appellate Division.

MCLAUGHLIN, J. (dissenting).   I had occasion to consider the effect of section 15 of article 2 of chapter 38, Laws of 1909, in *Williams Engineering & Contracting Co.* v. *City of New York* (175 App. Div. 571).   Subsequent investigation has led me to the conclusion that the construction there put upon the section is the correct one. Chapter 38 of the Laws of 1909 is entitled " An Act in relation to liens, constituting chapter 33 of the Consolidated Laws."   The act contains all the provisions of the laws then existing relating to liens on personal property except those relating to conditional sales of goods which were transferred to the Personal Property Law.   The first article is devoted to definitions, the second to mechanics' liens, and the remaining articles to other liens and the enforcement of the same.

Section 15 comes in article 2 relating to mechanics' liens.   It provides that "no assignment of a contract * * * or of the money or any part thereof due or to become due therefor, * * * shall be valid, until * * * such assignment * * * be filed in the office of the county clerk of the county wherein the real prop-

erty * * * is situated, * * * and such contract,
assignment or order shall have effect and be enforceable
from the time of such filing." From the language thus
used it is difficult to imagine how the purpose of the legis-
lature in enacting the section can be misunderstood. The
words "no assignment" are so comprehensive and so clear
and unambiguous as to include *every* assignment unless
words not expressed in the statute are read into it. But
it is suggested that notwithstanding the fact that the
language used, if taken literally, includes all assignments,
nevertheless that is not what the legislature intended;
that its intent was to protect a certain class of creditors
to the exclusion of others.

In ascertaining what the legislature intended by the
enactment, the words used must be taken in their ordi-
nary and usual meaning, and if a doubt arises as to the
sense in which they are used, then such doubt must be
solved, if possible, by a reference to the context (*Bristor*
v. *Smith*, 158 N. Y. 157), and it is only in case the intent
cannot be ascertained in this way that resort may be had
to the occasion of the enactment and to the policy which
prompted it. (*Palmer* v. *Van Santvoord*, 153 N. Y. 612.)
This statute, if the ordinary meaning be accorded to the
words used, is plain, and there is no necessity to resort
either to the general context of the whole article or to
the occasion or policy which prompted the enactment.
The evident purpose was to provide against secret trans-
fers of an interest in a contract or the money due or to
grow due under it, and a method to carry out and make
effective this purpose is provided.

*Every assignment*, no matter for what purpose given,
in order to be valid *must be filed* in a public office to the
end that any one may ascertain just what the interests
are and by whom held. The protection of a particular
class of lienors was not, in my opinion, the main purpose
of the enactment. It was only incidental. The main
purpose was publicity, and no one, no matter who, could

be injured if it be enforced according to its letter and spirit. Any one who takes an assignment, if he complies with the section, is fully protected. If he does not comply with it, then he takes no interest because the assignment cannot be enforced. Title to the subject-matter of the assignment remains in the assignor, and as such may be reached by a diligent creditor.

It may be that in some cases this would work a hardship. That is the case with the enforcement of nearly every statute, but in the long run a nearer approach to justice will be reached by giving to the words used their ordinary, normal and natural meaning rather than by inserting or substituting others in order to carry out what one may conjecture the legislature intended.

The construction for which I contend does not require reading anything into the statute, and for the obvious reason that it is perfectly plain upon its face. If a change be desired, then it should be done by legislative enactment and not by judicial fiat. The legislature can change the section if it sees fit to do so, but until it does the court will have performed its full duty by enforcing it according to the language used instead of giving a different effect by reading into the statute words not there to be found.

The view for which I contend is sustained by Snyder's Lien Law of New York (6th ed.), p. 234; Jensen's Mechanic's Lien Law of New York, p. 101; *Barrett* v. *Schaefer, Jr., & Co.* (162 App. Div. 52; affd., 217 N. Y. 722); *Van Kannel R. D. Co.* v. *Astor* (119 App. Div. 214, 217), and *Harvey* v. *Brewer* (178 N. Y. 5, 7). In the latter case this court said: "So, if what was done here was in effect either an absolute or equitable assignment of so much of the fund as the order named, it would come within the condemnation of section 15 of the Lien Law (*supra*). That section indicates that the legislature was of the opinion that the protection of the laborers and materialmen made it necessary that notice of an assign-

ment of a contract or the money due thereunder or some part thereof, or an order drawn by a contractor upon the owner, ought to be given to those interested, and so it provided that such an assignment or order should not be valid ' until the contract or a statement containing the substance thereof and such assignment or a copy of each or a copy of such order be filed ' in the proper county clerk's office."

The assignments in the present case from the Frick Company to the appellant bank never were filed in the office of the county clerk where the real property which was being improved was situate, and for that reason, as I read the statute, the same are invalid and unenforceable.

I am, therefore, unable to concur in the prevailing opinion in so far as it holds that such assignments are valid, and to that extent I dissent from the decision about to be made.

Collin, Cardozo, Pound, Crane and Andrews, JJ., concur with Hiscock, Ch. J.; McLaughlin, J., reads dissenting opinion.

Judgments reversed, etc.