Federal Heating Company, Inc., and Others, Appellants, *v.* City of Buffalo and Others, Appellants, Impleaded with Clinton T. Horton and Others, Appellants, Respondents, and Frank C. Hager and Others, Respondents, and Hager & George, Inc., and Others, Defendants.

Fourth Department, March 20, 1918.

Contract — municipal contract for construction of hospital — priorities of creditors and lienors — completion of work by creditors' committee after default of contractor — assignment of sums to become due and discount of said assignments by defendant bank — payment of advancements to trustee with authority to disburse sum for completion of work — misappropriation of moneys by trustee — when liability of city limited to original contract price — distribution of balance due.

Suit to obtain an equitable adjustment of the financial relations of parties concerned with the construction of a city hospital. The municipal contractor, a corporation, finding it necessary to procure financial assist-

ance pending payments by the city, entered into an agreement with a bank, one of the defendants, by which the contractor filed with the city comptroller from time to time assignments of money to become due under the contract and received in return from the city a certificate that such assignment had been made which was then accepted by the bank as a draft or order for the payment of money, and discounted by said bank which advanced funds against it. By agreement the treasurer of the contractor, also made defendant, deposited the proceeds of the certificates in his personal account at said bank and disbursed the same. Subsequently the contractor, again becoming financially involved, executed a general assignment of all moneys due or to become due under the contract to a trustee who was authorized to receive and receipt for treasury warrants issued by the city on account of the contract and also to receive moneys for the benefit of creditors to be paid out of the moneys received by the defendant bank under the previous assignment. The agreement with the trustee required him to extinguish certain liens and to make payment to materialmen who had not filed liens and it was also provided that a portion of the moneys should be paid to certain parties, including the plaintiffs, in consideration whereof they agreed to furnish materials for the completion of the contract.

Thus, said trust agreement ratified and did not attack the relationship of the defendant bank to the contract and ratified the validity and propriety of the prior assignments made through the city, the plaintiffs in this action acquiescing in said arrangement. Thereupon the plaintiffs discharged their liens of record in aid of the contemplated completion of the contract under the trust agreement.

Thereafter it became necessary for the trustee to obtain further financial advancements, and to that end he gave to the bank other assignments of moneys to become due under the contract and waived his previous assignments, under which agreement the bank accepted and discounted further assignment certificates. Thereafter the bank refused to accept further certificates for discount, whereupon the trustee, to prevent the payment of a sum due the bank, filed with the city comptroller a renunciation and withdrawal of his account and waiver upon all assignments, charging bad faith on the part of the defendant bank. Subsequently the contractor abandoned the contract and the city took over the completion of the work. Thereupon the materialmen and subcontractors appointed a committee of creditors, pooling their interests, and the city consented to the employment of said committee as authorized representatives of the creditors to complete the work, agreeing to pay to said committee any balance in the said treasury, which should be credited to the contract after deducting lawful claims against the fund. The creditors' committee completed the contract and received certain payments from the city, which left in the city treasury a balance due on the contract. It was shown, however, that some of the moneys advanced by the defendant bank were not properly disbursed in the performance or for the benefit of the contract.

Fourth Department, March, 1918.        [Vol. 182.

*Held*, that the city, by authorizing the completion of the work under the guidance of the creditors' committee, assumed no liability above its original contract liability, so that it should not be charged with a judgment for more than the unpaid balance due on the contract;

That the plan of financing the construction through the discounting of the certificates of assignments was not unlawful and that any liability of the city or the bank must be predicated upon the disbursing of the moneys so realized;

That as both the city and the bank had knowledge of the trust capacity in which the treasurer of the contractor acted, they were put upon inquiry as to the contents of the trust agreement;

That there was nothing. in the manner of financing the transaction which charged the city with implied notice that the funds so coming into existence would be diverted from their legitimate purpose, and hence, the city is not liable because of the diversion of the funds;

That, irrespective of the question as to whether the bank was chargeable with a knowledge of the diversion of the funds, the plaintiffs, having knowledge of the disbursing plan, are not in a position to complain of the manner of their disbursement, for the trustee was their trustee and agent and they received parts of the benefits of the acts of which they now complain.

*Held further*, that as the creditors' committee was organized with full knowledge of existing circumstances and it was agreed that on the completion of the work they should be paid only the sums unpaid upon the original contract, they are estopped from asserting further liability on the part of the city;

That when the bank advanced money upon the assignment certificates, it took its chance that the contractor would progress in the work in a manner to mature the payments due upon the contract and on the failure of the contractor in this respect the bank cannot recover moneys so advanced. This, on the principle that an assignor cannot give his assignee a better title than he himself has.

*Held further*, that as the plaintiffs have no liens on file, the balance remaining in the city treasury should be applied upon liens which have been filed in the order of their priority, and that such lienors as are unpaid in full upon such distribution should have judgment against the contractor for unpaid balances.

*Held further*, that the plaintiff is entitled to judgment both against the contractor and the trustee for moneys advanced by the bank and misapplied.

APPEAL by the plaintiffs, Federal Heating Company, Inc., and others, from part of a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Erie on the 29th day of March, 1917, upon the decision of the court after a trial at the Erie Special Term.

*Moot, Sprague, Brownell & Marcy* [*S. Fay Carr* of counsel], for the plaintiffs.

*Ernest F. Kruse,* for the defendant Bank of North Collins.

*William S. Rann, Corporation Counsel* [*George E. Pierce* of counsel], for the defendant City of Buffalo.

*Clinton T. Horton* and *Julius A. Schreiber,* for the defendants Horton, Schreiber and Large.

*Thomas C. Burke,* for the respondent McNeil Lumber Company, Inc.

*George C. Riley,* for the respondents Frank C. Hager and others.

LAMBERT, J.:

This action seeks equitable adjustment of the financial relations of the many parties thereto, arising out of and in connection with the construction of children's pavilions at the J. N. Adam Memorial Hospital located at Perrysburg, N. Y. In August, 1914, the city of Buffalo, the owner of such hospital, entered into a construction contract with Hager & George, Inc., for the erection and completion of such pavilions for the sum of $96,360.22. The defendant Charles A. Hager was the treasurer and general manager of the contractor.

By January, 1915, the contractor had found it necessary to procure financial assistance pending payments by the city, and it then entered into general arrangements with the defendant Bank of North Collins to that end. The scheme adopted was for the contractor to file with the city comptroller assignments from time to time of moneys to become due to it from the city under the construction contract. In return therefor the city, in each instance, issued a certificate of the fact that such an assignment had been made and filed. This assignment was then taken to the Bank of North Collins and treated as a draft or order for the payment of money. The bank discounted such, advancing funds against it.

At the time of the commencement of such relations the defendant Charles A. Hager had in said bank a small

Fourth Department, March, 1918. [Vol. 182.

personal account. It seems to have been arranged that the proceeds of the certificates discounted as above should be passed to this account and used as a disbursing account of the moneys. This plan was followed. At the time of the commencement of such arrangements Hager deposited in this account from other sources than this contract approximately $3,000.

Again, in March, 1915, the contractor filed another assignment to the defendant bank for the sum of $7,000, receiving from the city comptroller the usual certificate, and delivered it to the bank. There was then passed to the Hager account, as against such certificates, the sum of $3,500, and the balance was advanced at subsequent dates and in. varying amounts down to and including April twenty-second.

On April 3, 1915, there remainded unexpended of the total contract for such construction upwards of $41,000, which, after deducting the $7,000 assignment held by the defendant bank, left a balance applicable to the completion of the contract of upwards of $34,000. And on said date the various liens of the plaintiffs aggregated $13,875.45.

On this date the contractor had become further financially involved, and in an effort to carry the work of construction to completion, to the end that those advancing money might not lose their advancements, the following arrangement was entered into.

The contractor executed to one John M. Hoen a general assignment of all moneys due and to become due upon such construction contract. The assignment designated Hoen as a trustee and authorized and directed him to receive and receipt for all treasury warrants issued by the city on account of the contract, and also to receive for the benefit of the creditors $6,500 to be paid out of the moneys received by the defendant bank under the $7,000 assignment above mentioned. At that time there had been advanced as against that assignment the sum of $3,500.

The assignment to Hoen provided in great detail for the disposition of the moneys so to be received by him. He was first directed that the $6,500 from the bank on account of said $7,000 assignment should be by him applied in extinguishment of certain liens and payment to materialmen

who had not filed liens, all definitely therein identified. It was next provided that upwards of $15,000 of such moneys should be paid to certain parties, including the plaintiffs, who, coincidentally therewith, agreed to furnish further material to that amount for the completion of the construction contract.

It was further provided that Hoen might pay upon the payroll of the contractor upon this job not to exceed $500 a month for each of three specified months, and that for two of such months he might also pay not to exceed $500 each for current material bills, other than those therein before provided for.

He was next to apply the balance of the moneys in extinguishment of the liens of the plaintiffs in the order of their priority. After the extinguishment of same he was next to pay upon material and labor creditors of the contractor *pro rata,* and, lastly, if any balance remained, it was to be turned over to Hager & George, Inc.

It will be observed that this trust agreement ratifies, rather than attacks, the relationship of the defendant bank to this contract and the validity and propriety of the assignments made by the city up to that time.

This formal and detailed trust agreement was acquiesced in by the plaintiffs in this action and was filed with the city comptroller. At about the same time, upon one of the usual blanks provided for such purpose, a short form of assignment to Hoen as trustee was likewise made and filed. Both these assignments were evidently intended to cover the same situation, the one being in more detail than the other.

At about the time that these assignments were filed with the city comptroller and apparently in aid of the contemplated completion of the contract under Hoen's financial guidance, the plaintiffs all satisfied their liens of record.

But Hoen, as trustee, had progressed his work but a short time when it again became essential to anticipate payments to be made by the city, and hence to obtain discounts and financial advancements from some source. Such accommodation was requested of and granted by the bank and evidenced as follows. The contractor, Hager & George, Inc., again executed formal assignment, from time to time, to the bank

of specified sums out of moneys to become. due upon the construction contract. Upon such assignments, Hoen, as trustee, indorsed a consent and a waiver of his previous assignment. Upon the filing of such with the comptroller, the city again issued its certificates to the effect that formal assignment to the bank had been made, and again these certificates continued to be used as vouchers or drafts, and were accepted and discounted by the bank. Under this arrangement the bank accepted and discounted upwards of $12,000 of these certificates, accompanied by the express waiver and consent of Hoen as trustee. The defendant city has paid to the bank on assignment certificates $11,450 upon maturing payments under the construction contract.

As moneys were advanced by the bank upon the above plan, the same were passed to the credit of the Hager account, and were actually disbursed through that account. On June 21, 1915, the bank refused to accept a still further certificate for discount, whereupon Hoen avowed his purpose to prevent repayment to that bank of the $2,150 then unpaid upon certificates. To make good the threat, Hoen then filed with the comptroller of the city of Buffalo a renunciation and withdrawal of his account and waiver upon all assignments theretofore filed, charging fraud and bad faith on the part of the defendant bank. The city then ceased payments to the defendant bank.

In July, 1915, the contractors ceased work upon the construction contract. The city thereupon gave notice to the contractor, as provided in its contract, that unless performance of the contract was progressed, the city could take over the work. The notice was ignored, and the city, on July 15, 1915, declared the contract terminated and that it had taken over the completion of the contract.

Thereupon various creditors of the contractors pooled their interests and nominated a committee consisting of the defendants Horton, Schreiber and Large, who were designated to represent the materialmen and subcontractors upon this job. Negotiations were opened between such committee and the city and finally the city, in writing, announced that it had taken over the work of completion of the Hager & George, Inc., contract and that it consented to the employment of

the committee " as the authorized representatives of the materialmen and subcontractors, to complete the work." The notification further stated that the committee would be " paid all that is left in the city treasury, credited to said contracts, after deducting all lawful claims against said fund, on the part of materialmen, laborers or subcontractors, which may exist at the time of the completion of the work." Further statement was made that there was then in the treasury in money $2,150, to which claim was made by the defendant bank.

The creditors' committee, so coming into existence, completed the contract, except in a few stipulated particulars, aggregating in amount $1,250, for which sum it is agreed that the city is entitled to credit.  During the progress of the work of completion, the city paid to the creditors' committee $12,200, and there is left a balance, after such credits, of $3,544.27.

It is found, and well sustained, that in the disbursements of the moneys advanced by the defendant bank the sum of $1,850, by withdrawals, through the Hager account, was not applied in the performance or for the benefit of the contract in question.

Judgment has been had in the action denying to the defendant bank payment of the $2,150 it has advanced as above.  It also includes judgment against the bank and the city for $6,450 found to have been diverted from the moneys advanced by the bank to purposes other than the completion of this contract.  And for the further sum against the bank of upwards of $1,800 for the like diversion.

So far as the city is concerned, it was but exercising a lawful function, in the termination of its contract, upon continued default of Hager & George, Inc.  Its arrangement for the coupletion of the work under the guidance of the creditors' committee was accompanied by the definite arrangement that such work of completion should involve compensation therefor only to the extent of such moneys as were unexpended out of the contract price, less all lawful claims against the same.  It seems clear, therefore, that in the work of completion there is to be found no basis for any charge against the city which would make an excess of charge over

and above the original contract liability. Hence, affirmative judgment against the city for more than the unpaid balance of such contract can only be predicated upon a claim of liability arising through disbursement of moneys prior to the new arrangement with the creditors' committee.

So far as the defendant bank is concerned, there is no claim that it has profited unlawfully out of these transactions. Affirmative liability against it can only be predicated upon the theory of its acquiescence, express or implied, in the diversion of funds from the trust purposes of the Hoen assignment.

The plan of financing through the discounting of the certificates and assignments presents no unlawful phase. Hence, as to both the city and the bank, affirmative liability must be predicated upon the disbursing of the moneys so realized.

It is a familiar rule that one dealing with trust moneys, with knowledge of the trust, becomes a joint tort feasor in the conversion acquiesced in by one who has knowledge of such conversion. It must also be conceded that the course of dealing by the bank and the city in connection with these discounts was sufficient to apprise each of the trust capacity of Hoen. (*Gerard* v. *McCormick*, 130 N. Y. 261; *Fellows* v. *Longyor*, 91 id. 331; *First Nat. Bank* v. *Nat. Broadway Bank*, 156 id. 459.)

So apprised of the trust capacity in which Hoen was presuming to act, each, the city and the bank, was put upon inquiry, to examine the trust instrument, and each is to be held to knowledge of the contents thereof. (*First Nat. Bank* v. *Nat. Broadway Bank, supra.*)

As to the city then, was it justified, having knowledge of the contents of the Hoen assignment, in issuing its certificates and thereafter paying same, in view of the fact that it held Hoen's waiver and consent thereto as such trustee?

The creation of the trust was to establish means of fulfilling the defaulted contract obligations. Finances were required. Anticipated maturing payments by the city were assigned for such purposes. Hence, the raising of moneys to such end was a lawful exercise of a trust power by Hoen. There was, therefore, nothing in the manner of financing to give even implied notice to the city that the funds so coming into

existence would be diverted, or that there was danger thereof. Further, the city was not in a position to, nor was it bound to assume responsibility as to the proper disbursement of the moneys by Hoen. Its connection with the situation ended with the placing of Hoen in a position to make available for trust purposes the moneys derived upon such discounts. There would seem to be no room for holding the city a party directly or indirectly to any diversion of funds.

So far as the bank is concerned, the effort to hold it liable ultimately depends upon the theory that by placing these credits to the Hager account it became a party to the diversion thereof. It is also urged that it acquired knowledge of such diversion through the return of vouchers drawn upon that account, which indicated or might indicate from the indorsements thereon that the moneys had been improperly applied.

Neither position is sound in fact or law. But conceding that it be so, the difficulty with that position lies in the fact that the persons now complaining had knowledge of such disbursing plan. In some instances at least the plaintiffs in this action received moneys by this same means. They are not now in a position to complain of this manner of disbursement. Hoen was their trustee and agent. He acquiesced in this arrangement. They had knowledge of his acquiesence, both actual and constructive. Such a situation leaves no room for the application of the strict rule urged as against one who deals with trust property. With knowledge of what was being done, and themselves receiving benefits by that very means, they may not penalize the defendant bank for having shown only the same acquiescence they themselves exhibited and with which they had no complaint until the carelessness or bad faith of their chosen trustee developed loss through that means.

Further, the arrangement with the creditors' committee was made with full knowledge of the existing circumstances. At that time these parties seem to have been fully apprised of what had transpired. So knowing, they entered into the new contractual arrangement, with no indication of their present contention. And they therein agreed that for the completion of the work there should be paid only the unpaid sums upon the original contract.

Fourth Department, March, 1918.          [Vol. 182.

This would appear to be, at least so far as the city is concerned, a case of estoppel by contract.

The defendant bank complains of the disallowance of its claim for $2,150 actually advanced by it and claimed to have been devoted to the completion of this contract. Such disallowance was proper. As the bank advanced moneys upon these certificates, it took its chance that the contractors would progress their work at a time and in a manner to mature the payments upon the contract evidenced by the certificates. For their failure the bank cannot complain. The assignments and certificates could not put the bank in any better position than would the contractor have been had such assignments not been made. It is elementary that an assignor cannot give his assignee better title than he himself has. When it appears that the contractors were in default, then the payments evidenced by the unpaid assignments never matured; neither the contractor nor the bank could or can have recovery therefor. The bank certainly cannot be heard to ask performance of a contract which its assignor breached.

These conclusions lead to the result of the city having in its treasury $3,544.27, to be distributed to the parties having liens thereon. Such sum is unaffected by the Hoen assignment, inasmuch as it has come into existence under the new contractual situation between the city and the creditors' committee. It does not belong to the plaintiffs, inasmuch as they have no liens on file. It should be applied upon the liens filed in the order of their priority. The creditors' committee has on hand $204.90 which belongs to the city. This sum should be added to the above-mentioned sum, making a total to be distributed of $3,749.17. Such lienors as are not paid in full under such priority distribution are entitled to judgment against Hager & George, Inc., for the unpaid balances.

Plaintiffs are entitled to judgment against Hoen for the sum of $1,850, advanced by the bank and misapplied upon other contracts, and as this sum is materially less than the sum of $11,207.56 directed to be paid to plaintiffs in the judgment appealed from, modification of the judgment in this respect as to the application of this amount and judgment for deficiency

to the various plaintiffs will be necessary. The provision of the judgment directing the creditors' committee to account at the foot of the judgment for the proceeds of certain machinery on hand and in the process of sale is proper.

That portion of the judgment appealed from which gives affirmative relief against the defendant bank should be reversed, with costs.

That portion of the judgment which gives affirmative relief against the city should be modified in accordance with the above determinations, and such modification should be without costs in either court for or against the city.

The modifications and reversals above indicated will require modification of the findings by disapproval of certain findings and making other findings in place thereof in accordance with this opinion.

All concurred.

Judgment modified in accordance with the opinion and the following findings of fact contained in the decision are disapproved, viz.: Nos. 76, 77, 79, 80 and 83, also the conclusions of law numbered 5, 6, 7, 8, 9, 10, 11, 23. Additional findings of fact are made by this court upon the evidence in accordance with the opinion.