In the Matter of the Estate of CHARLES C. GAUTHIER, Deceased.

Surrogate's Court, Kings County, May 23, 1932.

PROCEEDING to discover property withheld from administratrix.

*Belfer & Belfer*, for the petitioner.

*Herbert Peake*, for the respondent.

WINGATE, S.  This decedent died on November 19, 1928, intestate, leaving a widow, Mary J. Gauthier, and a twenty-seven-year

old son as his only heirs at law and next of kin. Letters of administration were issued by this court to the widow on December 3, 1928. The property left by the decedent consisted of a bungalow at Gerritsen Beach, three savings bank accounts, aggregating $2,803.96, and a small amount of other personal property. The family residence on East Fifty-first street stood in the widow's name and was subject to a mortgage.

Shortly after the death, the widow, who appears to have had little if any previous business experience, became greatly concerned over threatened foreclosure proceedings on the mortgage on the family residence and a threatened action by the vendor of a piano for the recovery of unpaid installments, and sought the advice of the present respondent, who was a neighbor and engaged in the real estate and contracting business. His advice, apparently, was to the general effect that she attempt to make herself and the estate execution proof, and to this end he induced her to give him, without consideration, a mortgage on the Gerritsen Beach property and to transfer to him individually the bank accounts of the decedent which had, in the interval, been transferred by her to her name as administratrix of the estate. These steps were accomplished in the latter part of December, 1928, the widow and Donovan going to the three banks and making a direct transfer of the three accounts from the estate to him as an individual on December twenty-eighth. The assent of the banks to such an obvious *devastavit* is somewhat surprising, but this question is not here in issue.

A few months later the widow succeeded in solving the difficulties with respect to the mortgage and the sums due on the piano, and thereupon requested Donovan to return the bank accounts to her. He evaded doing so for some time, although making certain small payments to her from these funds, and finally refused to pay her any more. The administratrix was thereupon compelled to bring the present proceeding in discovery for their recovery. The right of the estate in respect thereto is the question at issue.

As the case was tried, the only defense interposed was that these estate moneys were paid over to the respondent by the administratrix as a loan. This was emphatically denied by the petitioner, but, even were it the fact, it would not alter the legal situation of the respondent. On the issue of credibility the court must, however, find in favor of the petitioner in any event. The testimony of the respondent and his wife was full of contradictions, and their demeanor on the stand and general manner of testifying were such as to disincline the court to give any credence to their testimony on any controverted question. In spite of the fact that the respondent personally signed the answer interposed in this proceeding, he

categorically swore that he was unable to read or write, and although he denied in the first instance knowing that the petitioner was a widow at the time of their first conference respecting the subject-matter of the estate, he later admitted the untruthfulness of this testimony.

Since the earliest times it has been a recognized principle of law that where any person deals with a fiduciary, knowing him to be such, he is a *particeps criminis* in a *devastavit* committed by the transaction. This basic rule was clearly stated as early as the year 1827, in the case of *Colt* v. *Lasnier* (9 Cow. 320), where the opinion (at p. 342) reads in part as follows: " It seems to me, therefore, the correct rule, both in England and in this State, is, that any person receiving from an executor the assets of his testator, knowing that this disposition of them is a violation of his duty, is to be adjudged as conniving with the executor; and that such person is responsible for the property thus received, either as a purchaser or a pledgee."

In *English* v. *McIntyre* (29 App. Div. 439) the court says (at p. 443): " From the very earliest day it has been held that, where a trustee had misappropriated the trust estate, the *cestui que trusts* or a substituted trustee were not confined to the legal remedy by an action for damages against those who had illegally taken the trust estate, but might maintain an action in equity for a judgment requiring the property taken to be returned to the possession of the trustee and compelling the wrongdoers to account for the interest and profits which they had received. (*Wetmore* v. *Porter*, 92 N. Y. 76; *Newton* v. *Porter*, 69 id. 133; *Holmes* v. *Gilman*, 138 id. 369; *Marshall* v. *de Cordova*, 26 App. Div. 615.)"

Other applications of the doctrine may be found in *National Surety Co.* v. *Manhattan Mortgage Co.* (230 N. Y. 545); *White* v. *Price* (39 Hun, 394, 397; affd., 108 N. Y. 661); *Reynolds* v. *Ætna Life Insurance Co.* (28 App. Div. 591, 600 *et seq.*; affd., 160 N. Y. 635); *Cohnfeld* v. *Tanenbaum* (176 id. 126, 131); *Federal Heating Co.* v. *City of Buffalo* (182 App. Div. 128, 136; affd., 229 N. Y. 540); *Powell* v. *Freeport Bank* (200 App. Div. 432, 434).

It is unquestionable, indeed, it is admitted by the respondent, that at the time of the transfer of these bank accounts to him individually, he knew that they were the property of this estate. Even granting that his testimony was true, he knew, or should have known, that a loaning of these moneys to him amounted to a *devastavit*. He, therefore, became a constructive trustee of them and liable to account for their diversion. There is no estoppel against the petitioner in this connection, since the proceeding is brought on behalf of the estate which cannot be estopped by

reason of the participation by its fiduciary in an unlawful transaction.

At the hearing the respondent gave some rather indefinite testimony to the effect that since his receipt of the moneys he had been adjudicated a bankrupt. No plea of this sort was, however, interposed as a bar, for which reason, if it was a fact, it is entirely immaterial to the issues in the case. (*Cornell* v. *Dakin*, 38 N. Y. 253, 256; *Wheeler* v. *Newton*, 168 App. Div. 782; affd., 220 N. Y. 607.)

The final question for decision relates to the interest with which this respondent is chargeable. His receipt on December 28, 1928, of the sum of $2,803.96 is definitely established. His liability to account for this sum, with legal interest from the date of receipt to the date of repayment, is a legal result. No testimony was adduced by him respecting the times or amounts of any sums repaid. The petitioner, however, in her direct testimony, stated that a total of $1,280 had been repaid, but her only testimony regarding the time of repayment was that the first repayment was made to her five months after the funds had been turned over to the respondent. She introduced into evidence a memorandum showing various sums repaid, the first of which was $30, and it is to such repayment that her testimony respecting time must be held to refer. It results that the respondent is liable for interest at six per cent on $2,803.96 from December 28, 1928, to May 28, 1929, and is liable for six per cent interest on all or a portion of the balance of $2,773.96 from that date to the time of final payment. The original obligation for principal having been demonstrated, and the obligation for interest being added as a legal result, the burden was thrown upon the respondent to exculpate himself from so much of such liability as the facts warranted. Beyond the point already noted, the admissions of the petitioner did not aid him, their only demonstration being that at the time of the trial, which was on May 19, 1932, an additional sum of $1,250 had been repaid. It, therefore, follows that the respondent is liable for legal interest in addition to the amount heretofore stated, on $2,773.96 from May 28, 1928, to the date of trial, and is further liable for legal interest on $1,523.96 from the date of trial until the entry of the decree herein. These sums are, of course, in addition to the remaining principal obligation of $1,523.96.

In view of respondent's reprehensible conduct in connection with this matter, costs will be assessed against him.

Proceed accordingly.