JAMES ARMSTRONG, Plaintiff, *v.* MARY A. CHISOLM and Others, Defendants, Impleaded with CHARLES N. TALBOT, as Assignee of ANDREW J. ROBINSON for the Benefit of Creditors, Appellant, and HENRY W. MILLER, Respondent.

*Order given by a contractor on the owner for the payment of money to a sub-contractor — when it constitutes an equitable assignment — it is not affected by the making before its acceptance of a general assignment for creditors by the contractor — it may be subsequently filed under section 15 of the Lien Law.*

One Robinson made a contract with the owner of certain premises by which Robinson agreed to make certain alterations in the premises and the owner agreed to reimburse him for the cost of the labor and materials, and also to pay him as compensation for his services a commission of fifteen per cent upon the entire cost.

The contract provided, "all payments shall be made upon written certificates to the effect that such payments have become due."

February 26, 1900, Robinson delivered to one Miller, to whom he had sublet the plastering work required by the contract, two orders for moneys which were concededly due for the plastering work.

One of such orders provided as follows: "Please pay to H. W. Miller or order for our account the sum of four hundred and ninety dollars ($490), the balance due him under his contract for plastering at the Inverness Apartment House, 57th Street & Seventh Avenue, and charge said payment to our account."

The other order provided as follows: "Please pay to H. W. Miller or order for our account the amount as adjusted by Mr. William N. Elbert, Superintendent, for extra work done by him at the Inverness Apartment House, 57th Street & Seventh Avenue, and charge said payment to our account."

It did not appear that Robinson had any other business relations with the owner than such as grew out of the contract, or that he had any other account or general credit with the owner.

At three o'clock on the afternoon of February 26, 1900, the orders were presented at the office of the owner's attorney in fact, and he being absent they were left with his clerk. At six o'clock on the evening of that day Robinson made a general assignment for the benefit of creditors which was filed the next day.

March 14, 1900, the orders, or copies thereof, were filed in the office of the county clerk, pursuant to the provisions of section 15 of the Lien Law (Laws of 1897, chap. 418).

*Held,* that the orders constituted equitable assignments and became effectual and enforcible against the owner, even though he had not accepted them prior to the filing of the general assignment;

That assuming, without deciding, that the filing of the orders in the county clerk's office, pursuant to the provisions of section 15 of the Lien Law, was

essential to render them valid as against Robinson or his assignee for the benefit of creditors, the assignee took subject to the right of the payee of the orders to file them and thus perfect his title to the fund.

O'BRIEN, J., dissented.

APPEAL by the defendant, Charles N. Talbot, as assignee of Andrew J. Robinson for the benefit of creditors, from so much of a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 4th day of March, 1904, upon the decision of the court rendered after a trial at the New York Special Term, as directs that the defendant Henry W. Miller recover of the defendant Mary A. Chisolm the sum of $2,082.14, together with costs and interest, and from so much of said judgment as directs that any sum is to be paid to the defendant Miller by the defendant Chisolm out of the amount adjudged to be due and unpaid under a certain contract between the defendant Andrew J. Robinson and the said defendant Mary A. Chisolm, before the payment of the balance of the said amount to the defendant Charles N. Talbot as assignee of Andrew J. Robinson for the benefit of creditors.

*Francis Woodbridge,* for the appellant.

*Duncan Edwards,* for the respondent.

LAUGHLIN, J.:

The action was brought to foreclose a mechanic's lien. The sole controversy is between the assignee for the benefit of creditors of the general contractor and a sub-contractor to whom the general contractor delivered orders upon the owner, claimed to be equitable assignments, which were presented for payment but not filed in the office of the county clerk prior to the making of the general assignment. Robinson was the general contractor, but he was doing business under the name of Robinson & Wallace. He contracted with the owner to make certain alterations in the Inverness apartment house, Fifty-seventh street and Seventh avenue, New York city, upon a commission basis, that is to say, the owner was to reimburse him for moneys expended for materials and labor and, as compensation for his services, pay fifteen per cent upon the entire cost. It was agreed that a separate estimate of each portion of the work

should be submitted by the contractor to the owner for approval before the work should be done or contract therefor let. Robinson let the contract for the plastering work to one Miller. On the 26th day of February, 1900, there was a balance of $490 due under this contract, and the further sum of $1,202.80 for extra work, the price having been adjusted by mutual consent of the owner, contractor and sub-contractor at that amount. On that day the contractor signed and delivered to Miller, the sub-contractor, an order of that date in the following form, addressed to the owner and to her attorney in fact, to wit: "Please pay to H. W. Miller or order for our account the sum of four hundred and ninety dollars ($490), the balance due him under his contract for plastering at the Inverness Apartment House, 57th Street & Seventh Avenue, and charge said payment to our account."

On the same day he signed and delivered another order to Miller, in payment for the extra work, dated and addressed in the same manner, to wit: "Please pay to H. W. Miller or order for our account the amount as adjusted by Mr. William N. Elbert, Superintendent, for extra work done by him at the Inverness Apartment House, 57th Street & Seventh Avenue, and charge said payment to our account."

These orders were presented at the office of the attorney in fact for the owner, and, in his absence, left with his clerk at three o'clock in the afternoon of the same day. At six o'clock that evening the general contractor made an assignment for the benefit of creditors to the appellant Talbot, which was filed in the office of the county clerk at nine-ten the next morning. The assignee entered upon the discharge of his duties, and thereafter and upon the ninth day of March the owner notified the payee of the orders that payment thereof would be refused.

The assignee for the benefit of creditors contends that these orders did not constitute equitable assignments of the funds, and that he is entitled to the balance owing on the contract. If the orders constituted equitable assignments of funds owing on the contract, they became effectual and enforcible against the owner of the property upon notice and without acceptance. (*Hirshfield* v. *Ludwig*, 69 Hun, 554; *Lauer* v. *Dunn*, 115 N. Y. 405; *Williams* v. *Edison Electric Illuminating Co.*, 16 N. Y. Supp. 857.) The orders

were made for value, delivered to the payee and presented to the owner, through her authorized agent, prior to the execution of the general assignment. These specific moneys were concededly due on the contract and for extra work respectively. The orders refer to the contract, and although they do not in express terms direct that the amounts be charged to the contractor on account of this particular contract, yet that is plainly what was intended by the drawer and what must have been understood by the owner. There is no evidence of any other dealings between the parties, nor is there any evidence upon which the inference might be predicated that the contractor had any other account or general credit with the owner. The contract between the owner and Robinson provided that "all payments shall be made upon written certificates to the effect that such payments have become due." It is evident that these orders were intended to comply with that provision of the contract. If it had been intended to draw the orders on the general credit of the contractor, then it would have been unnecessary to refer to the basis of the drawer's indebtedness to the payee, because that would not concern the owner. Since the orders were not drawn upon the general credit of the contractor, but upon particular funds due and owing upon the contract, they constituted equitable assignments of such funds, unless the statute rendered them invalid until filed, and title thereto immediately passed to the payee. (*Brill* v. *Tuttle*, 81 N. Y. 454; *Lauer* v. *Dunn* (*supra*); *Stevens* v. *Ogden*, 130 N. Y. 182; *Bradley & Currier Co.* v. *Ward*, 15 App. Div. 386; *Kennedy* v. *McKone, No. 1*, 10 id. 88.)

Neither the orders nor copies thereof were filed in the office of the county clerk until the fourteenth day of March. It is manifest that, notwithstanding the general assignment, Miller might have subsequently filed a mechanic's lien and have thus become entitled to the moneys. (*John P. Kane Co.* v. *Kinney*, 174 N. Y. 69.)

Prior to the amendment of section 5 of the Mechanics' Lien Law of 1885 (Laws of 1885, chap. 342) by chapter 915 of the Laws of 1896, providing in substance that no assignment of the contract or of the money due or to grow due thereunder and no order drawn by the contractor upon the owner for the payment of any such money should be valid until the contract, or a statement of its substance, and such assignment, or a copy of each, or a copy of the

order, was filed in the county clerk's office in the county where the property improved or to be improved was situated — an equitable assignment of the whole or any part of the fund could be made by the contractor, which would take precedence over liens subsequently filed. (*Bates* v. *Salt Springs Nat. Bank*, 157 N. Y. 322; *McCorkle* v. *Herrman*, 117 id. 297.) This beneficent provision of law, which was subsequently incorporated in section 15 of the Lien Law (Laws of 1897, chap. 418), was not made for the protection of contractors who might make such assignments or draw such orders, but for the security of those furnishing labor or material upon the strength and credit of the contract, and others taking like assignments or orders without notice of the assignment of an interest in the contract or of the moneys payable thereunder. In *John P. Kane Co.* v. *Kinney* (*supra*) the court say : " In cases of a contest between the rights of a lienor and a general assignee for the benefit of creditors, the circumstance that the fund may have been and generally is earned by the labor or expenditure of the person filing the mechanic's lien is entitled to some weight ; " and hold that the assignee for the benefit of creditors stands in the place of the assignor, with no other or greater right, and takes the property subject to every equity and claim that might have been asserted by third parties. It was held in that case that an assignee for the benefit of creditors of a general contractor took the property subject to the right of laborers and materialmen to subsequently file mechanic's liens for work performed prior to the assignment. Although the Lien Law (§§ 3, 10) expressly declared that the person filing a notice of lien should only have a lien " from the time of filing " the notice, which might be filed during the progress of the work or the furnishing of the materials or within ninety days thereafter, the court declared that laborers and materialmen had, prior to filing the lien, an unperfected or inchoate right to a lien, which became perfected, complete and absolute as against the contractor and his general assignee on filing the notice of lien as prescribed by statute. I am of opinion that this rule should be applied here. Prior to the general assignment, the payee of the orders had acquired inchoate rights, at least, which neither the contractor nor his assignee could prevent his completing and perfecting by filing the orders, as required by section 15 of the Lien Law, even if compliance therewith were necessary as against

the owner or his general contractor. If the assignments were not valid even as against the general assignee of the contractor until filed, which is by no means certain and it is unnecessary to decide, still the assignee took title subject to the right of the payee to file the assignment and perfect his right to the fund.

It follows, therefore, that the judgment should be affirmed, with costs.

Van Brunt, P. J., Patterson and Hatch, JJ., concurred; O'Brien, J., dissented.

Judgment affirmed, with costs.