"where the prior provision of law has been entirely dropped, and provisions upon the same subject are found in the new act. Under such circumstances, how is the consolidation act to be construed? It was the manifest intention of the Legislature that it should take the place of the numerous special and local acts applicable to the city of New York, which had been enacted for more than a century, and to rescue them from the obscurity, uncertainty, and difficulty caused by their scattered condition; and that intention should have effect. * * * Here sections of the act of 1865 contained provisions for the assessment and payment of the expenses of improving streets, and complete provisions upon the same subject, somewhat dissimilar, however, are contained in the consolidation act, and hence they must be deemed, under all the decisions, to take the place of the prior provisions, and to furnish the only rule upon the subject."

There was no such intention expressed by the amendment of the charter. In Reis v. City of N. Y., 188 N. Y. 58, 80 N. E. 573, it would seem to be the opinion of the Court of Appeals that portions of this act of 1895 were in force. The determination of the board of public improvements was a determination by the authorities vested with that power under the statute of 1895, and we think, therefore, that the relators were entitled to a deed of the property.

The order appealed from should therefore be reversed, with $10 costs and disbursements, and the peremptory writ of mandamus granted, with $50 costs. All concur.

---

(119 App. Div. 214)

VAN KANNEL REVOLVING DOOR CO. v. W. & J. SLOANE et al.

(Supreme Court, Appellate Division, First Department. May 24, 1907.)

1. MECHANICS' LIENS—ASSIGNMENT OF MONEY DUE—FILING ASSIGNMENT—EFFECT OF FAILURE TO FILE.

Under Laws 1897, p. 521, c. 418, § 15, requiring an assignment of money due or to become due for labor performed or materials furnished for improvement of real property, or an order drawn by a contractor or subcontractor on the owner for payment of such money, to be filed, etc., an equitable assignment not so filed is inoperative as against subsequent liens.

2. SAME—EQUITABLE ASSIGNMENT—WHAT CONSTITUTES.

G., a subcontractor for certain work on a hotel, notified defendant contractors by letter that he had sublet certain portions thereof to certain third persons, and authorized the defendants to deduct from the payments due and to be due under their contract such sums as the third persons earned under their subcontracts and pay it to them; also for defendants to retain sufficient money to protect themselves against any claims that might arise out of the contract with the third persons. Defendants wrote to the third persons regarding the matter, and agreed to pay to them direct such sums as they might be entitled to from G. covering the work contracted to be done for defendants. *Held*, that the letters constituted an equitable assignment of so much of the funds in the hands of defendants as was necessary to the payment of sums earned by G.'s subcontractors in performing their subcontracts.

3. SAME—EFFECT OF ASSIGNMENT OF CLAIM.

The letters did not constitute an absolute promise on the part of defendants to pay G.'s subcontractors, but merely a promise to retain and devote to their payment the amounts they might earn under their respective subcontracts.

**4. SAME.**

The letters and acceptances did not operate as a payment of sums due under the provisions of the original or any of the subcontracts, so as to defeat subsequent liens.

**5. SAME.**

The fact that defendants paid to their subcontractors $12,000 as a consideration for subletting portions of the work to defendants' nominees did not operate to make those nominees subcontractors of defendants, and therefore not within the requirements of the statute as to filing the assignment, especially where the pleadings of the parties admit that those nominees were subcontractors of defendants' subcontractor, and their executed contracts show the same condition.

Patterson, P. J., and Ingraham, J., dissenting.

Appeal from Equity Term, New York County.

Action by the Van Kannel Revolving Door Company against W. & J. Sloane and others. From a judgment for defendants Sloane, plaintiff appeals. Reversed and remanded.

This action was brought to foreclose a mechanic's lien for $5,497.20 against the Hotel St. Regis, Fifth avenue and Fifty-Fifth street, New York City, owned by John Jacob Astor. W. & J. Sloane, the only respondents before the court on this appeal, were the original contractors for the interior work and decorations. Grissler & Sons were subcontractors for furnishing and erecting a large part of the interior woodwork. The plaintiff was a subcontractor with Grissler & Sons for the manufacture and furnishing of the doors and trim mentioned and set out in their mechanic's lien. Grissler & Sons subsequently became bankrupt. The questions here involved are not affected by such proceeding. W. & J. Sloane with Grissler & Sons mutually agreed that the Sloanes would pay the Grisslers $12,000, in addition to the amount named in their contract, for the privilege and right of naming the subcontractors of Grissler & Sons. The subcontractors were unwilling to look to the Grisslers for their pay, and the contract compensation was arranged by the Grisslers writing letters to the Sloanes in the case of two subcontractors, the substance of each being the same, in the following form:

"Messrs. W. & J. Sloane, B'way & 19th St., N. Y. City.

"Gentlemen: We beg to advise you that we have sublet part of the work for the St. Regis Hotel, covered by our contract with you, to R. Hilbrand for the amount of twenty-seven thousand dollars ($27,000), for French walnut rooms, and for doors throughout at $33 each. We hereby authorize you to deduct, from the payments that may become due to us under our contract with you, such amounts as R. Hilbrand may have earned under his contract with us, and to pay such amounts direct to him from time to time. We further authorize you to retain at all times, out of amounts that may be due us, sufficient money to protect you against any claims that may arise out of the contracts of Hilbrand with us.                    Grissler & Sons."

This letter was responded to by a letter from W. & J. Sloane to R. Hilbrand as follows:

"Dear Sir: Referring to your contract with Messrs. Grissler & Sons for work to be done in the Hotel St. Regis, we hereby agree to pay to you direct such sums as you may be entitled to from Messrs. Grissler & Sons covering the work which they have contracted to do for us.

"Yours truly,                    W. & J. Sloane."

None of the contracts, orders, letters, or a statement of the same, were filed in the county clerk's office. Mr. Astor, in his answer, admits the ownership of the property and the existence of the contract between himself and W. & J. Sloane, and that "at the time of the alleged filing of said notice of lien there was and still is due and owing from this defendant to the said contractors W. & J. Sloane, under an agreement executed between the said W. & J. Sloane and this defendant, a sum in excess of the amount of the plaintiff's alleged lien, and alleges that this sum is being held by this defendant because of the

alleged lien claimed by the plaintiff, and that this defendant cannot safely pay the said money until the respective rights of all the parties to this action are adjudicated and settled." W. & J. Sloane exercised their contract right with Grissler & Sons, and named one Ferguson and one Hilbrand as subcontractors of a portion of the work involved in the contract between the Sloanes and the Grisslers. Subsequently Grimmer & Son became subcontractors under Grissler & Sons for a portion of the work, which was partly performed before Grissler & Sons went into bankruptcy. Executed contracts between the Grisslers and Hilbrand, and between the Grisslers and Grimmer & Son, respecting the portion of the work to be done by them, respectively, appear in the record. It is alleged in the answer of the several defendants, except Ferguson, that the said Ferguson, Hilbrand, and Grimmer & Son were subcontractors of Grissler & Sons, and the trial court so found as a fact. W. & J. Sloane admit the contract with Grissler & Sons, originally for $117,000, increased by mutual agreement to $154,000, and set up the affirmative defense of the several written orders from Grissler & Sons against the funds in their hands coming to the Grisslers under the contract, the acceptance of these orders, payments on account of certain sums prior to the filing of the liens, payments subsequent to the filing and service of the lien, and amounts still unpaid and in their hands largely in excess of plaintiff's lien. The trial court dismissed the action as against all of the defendants upon the merits, and no appeal has been taken from the judgment entered thereon, except as against the defendants W. & J. Sloane. The owner of the property against which the lien is filed is not before the court on this appeal.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and LAMBERT, JJ.

Hector M. Hitchings, for appellant.

Selden Bacon, for respondents.

LAMBERT, J. The question upon the merits presented by this appeal is whether these orders, drawn upon W. & J. Sloane by Grissler & Sons and accepted by the former, operated as an equitable assignment of the funds then due or to become due from the original contractors in such a manner as to defeat the rights of the plaintiff under the lien law. We are of the opinion that, under the law as it existed in this state prior to 1896, the effect of the transaction would have been to deprive the plaintiff of any rights under his subsequent lien. We are, however, to consider the law as it existed at the time of these transactions. Chapter 418, p. 521, of the Laws of 1897, has materially changed the provisions of the prior statutes. Section 15 of that act now provides as follows:

"Sec. 15. No assignment of a contract for the performance of labor or the furnishing of materials for the improvement of real property or of the money or any part thereof due or to become due therefor, nor an order drawn by a contractor or a subcontractor upon the owner of such real property for the payment of such money shall be valid, until the contract or a statement containing the substance thereof and such assignment or a copy of each or a copy of such order, be filed in the office of the county clerk of the county wherein the real property improved or to be improved is situated, and such contract, assignment or order shall have effect and be enforceable from the time of such filing."

In our judgment the letters from the Grisslers to the Sloanes, coupled with their letters to the subcontractors, constituted an equitable assignment of so much of the funds in the hands of W. & J. Sloane as was necessary to the payment of the sums earned by these several subcon-

tractors in performing their contracts with Grissler & Sons, and these equitable assignments, as against every one other than lienors, would be valid. But, when we concede that there was an equitable assignment "of the money or any part thereof due or to become due therefor," we bring the case within the letter and spirit of the section of the statute above cited, and which was intended to protect the rights of subcontractors and materialmen in the funds in the hands of the owner or contractor at the time of filing the lien, unless record notice of the existence of such assignment was given. The language of the statute is broad and comprehensive, and includes all assignments, or orders drawn upon the owner (section 15), whether such assignments are legal or equitable in their nature. These letters did not constitute an absolute promise on the part of W. & J. Sloane to pay the subcontractors. They merely agreed to retain and devote to the payment of these subcontractors the amount which they might earn in performing their contract with Grissler & Sons. The entire transaction contemplated that the subcontractors were performing their contracts with Grissler & Sons; the respondents Sloane merely being authorized to retain so much of the contract price of the work with the Grisslers as should be necessary to the payment of the subcontractors. This was not, therefore, the case of an owner or contractor paying in good faith an amount of money due upon the performance of a contract before the filing of a lien, nor was it the case of an owner or contractor in good faith advancing the money or its equivalent in payment of work and material thereafter to be furnished. It constituted merely an equitable assignment of a fund for the payment of subcontractors when their work should be completed under Grissler & Sons' contract, and such an assignment is required to be filed in the manner pointed out by the statute before it can become operative as against subsequent liens. This was not done.

The whole scheme of the statute points to this purpose. There is no provision which prevents an owner or a contractor from paying in advance for the work or improvement, provided the contract provides for such payment, and no materialman, laborer, or subcontractor could complain or gain any rights thereby under the law; for it is provided that, if labor is performed for or materials furnished to a contractor or subcontractor for an improvement, the lien shall not be for a sum greater than the sum earned and unpaid on the contract at the time of filing the notice of lien and any sum subsequently earned thereon, and that in "no case shall the owner be liable to pay by reason of all liens created pursuant to this article a sum greater than the value or agreed price of the labor and materials remaining unpaid, at the time of filing notices of such liens, except as hereinafter provided." Section 4, Lien Law. This is so that the subcontractors and others interested may contract with a knowledge of the facts. Section 8 of the act provides that a "statement of the terms of a contract pursuant to which an improvement of real property is being made, and of the amount due or to become due thereon, shall be furnished on demand, by the owner or his duly authorized agent, to a subcontractor," etc. Section 7, in harmony with the general scheme, provides that:

"Any payment by the owner to a contractor upon a contract for the improvement of real property, made prior to the time when, by the terms of the contract, such payment becomes due, for the purpose of avoiding the provisions of this article, shall be of no effect as against the lien of a subcontractor, laborer or materialman under such contract, created before such payment actually becomes due."

Any owner or contractor may make a contract to pay for the work or improvement in advance, or at stated times during the progress of the work and he may make such payments when they become due, unless in the meantime a notice of lien has been filed. The statute provides for giving each person in interest an opportunity to know the contents of the contract and the amount due or to become due thereon, so that he may act intelligently in reference to his own interests; and section 15 fits into this scheme, and provides that, if there is any assignment of the contract or of moneys due or to become due under the same, record notice of such fact shall be given. Both by the terms of the act (section 22) and by that rule which requires a liberal construction of remedial statutes, we are required to construe this statute in the interests of those whose rights are to be protected, and an examination of the cases to which attention is called confirms the view here reached. Lawrence v. Dawson, 50 App. Div. 570, 64 N. Y. Supp. 185, affirmed 167 N. Y. 609, 60 N. E. 1115; Harvey v. Brewer, 82 App. Div. 589, 81 N. Y. Supp. 846, affirmed 178 N. Y. 5, 70 N. E. 73; Kane Co. v. Kinney, 174 N. Y. 69, 66 N. E. 619; Armstrong v. Chisolm, 99 App. Div. 465, 91 N. Y. Supp. 299. These cases have dealt with a variety of facts, but they have all recognized the effect of section 15 of the lien law, as requiring equitable assignments to be filed in order to become effective as against subsequent liens. The conclusion is reached that the letters and acceptances involved in the transactions mentioned did not operate as a payment of sums due under the provisions of the original or any of the subcontracts, and therefore we are of opinion that the learned court at Special Term erred in the conclusion that the case was not within the provisions of the statute.

The respondents contend that because they paid the Grisslers the sum of $12,000 in consideration that they would sublet portions of the work under their contract to the nominees of the Sloanes, and that Ferguson and Hilbrand were named and did portions of the work with the understanding that payments to each of them were to be made by the Sloanes, the conclusion is permissible that to the extent of performance by them they became subcontractors of the Sloanes, and therefore not within the requirements of the statute. If such were the facts, the conclusion would be unassailable. They are, however, the contrary. The pleadings of the respective parties to the action admit that Ferguson, Hilbrand, and Grimmer & Son were subcontractors of Grissler & Sons. In respondents' answer we find the following specific allegation:

"Were thereupon subcontracted by said Grissler & Sons, part to the defendant Robert B. Ferguson * * * and part to one Rudolph Hilbrand; * * * that some time prior to September 1, 1903, the said Grissler & Sons subcontracted to the firm of Chas. Grimmer & Son certain work under their said contract with the defendant."

Beyond this, the executed contracts of the parties under which the work was done are in evidence, by which it is disclosed that these parties were subcontractors of Grissler & Sons. The contention of the respondents is without the slightest foundation.

As we view the law applicable to the facts appearing in the appeal book herein, a reversal of the judgment would be unavailing to the appellant. The foundation of this action is the lien upon the "real property improved or to be improved, and upon such improvement." Section 8, Lien Law. This foundation has been taken away by the judgment dismissing the complaint upon the merits as against the owner of the real property, and now made conclusive by reason of the expiration of the time in which an appeal might have been taken as of right. Before the argument of this appeal, however, a motion was made by the respondent, upon notice, to dismiss the appeal herein. From the record there disclosed, it appears that the owner, Mr. Astor, after the time to take an appeal as to him had expired, and under some alleged stipulated right, paid the balance of the contract price of construction of the building in question to the general contractors (the Sloanes); and it may be that upon a trial of the case it will be shown that the money payment was to be held as a substitute for the "real property improved," to abide the event of the action, or that it was paid and received under such circumstances that it became impressed with a trust available to the appellant. These are considerations for the trial court.

The judgment should be reversed, and a new trial ordered, without costs to either party of this appeal.

HOUGHTON and CLARKE, JJ., concur.

INGRAHAM, J. (dissenting). I think this judgment should be affirmed. It seems to me that the arrangement between W. & J. Sloane and their subcontractors, Grissler & Sons, entered into before any order was given to the plaintiff, or any materials furnished or work done by it under its contract with Grissler & Sons, substituted Ferguson and Hilbrand as contractors, and withdrew the work that they were to do from the contract between W. & J. Sloane and Grissler & Sons. The form adopted was an agreement by which the amount payable to Ferguson and Hilbrand was to be deducted from the amount that W. & J. Sloane were to pay Grissler & Sons. But I think the court should look beneath the form that was adopted, and get at the real intention of the parties as evidenced by the whole transaction. The agreement of W. & J. Sloane to Ferguson and Hilbrand was not to pay to them any part of the money that was payable under the contract to Grissler & Sons, but was a new promise to pay for the work to be done by Ferguson and Hilbrand which was necessary to carry out the contract between W. & J. Sloane and the owner of the building. Ferguson and Hilbrand thus became original contractors with W. & J. Sloane, by which W. & J. Sloane were bound to pay them for the work and material that they furnished for the building; and, while the contract made between Grissler & Sons and Ferguson and Hilbrand was adopted as the basis of W. & J. Sloane's contract with Ferguson and Hilbrand,

the effect of the arrangement was that Grissler & Sons were relieved from the performance of their contract so far as it related to what was to be furnished by Ferguson and Hilbrand, so that a new contract was made, by which Ferguson and Hilbrand furnished certain work and materials directly to W. & J. Sloane, and with the performance of that work Grissler & Sons had nothing to do. It seems to me, therefore, that payment for this work and materials furnished by Ferguson and Hilbrand never became moneys due to Grissler & Sons, for which a contractor with Grissler & Sons would, after the substituted arrangement, be entitled to have applied to his contract.

Nor do I think the sum of $12,000, that W. & J. Sloane agreed to allow Grissler & Sons, was a part of the contract price. The payment of that sum to Grissler & Sons was in consideration of their allowing W. & J. Sloane to select the persons to do this particular work. It was a pure gratuity, not a payment for the work that Grissler & Sons had agreed to do, and so was not to be considered as money due under the contract. It was the consideration paid by W. & J. Sloane to allow the new contract to be made with other persons to do a part of the work to be done. It seems to me there was a complete substitution of contractors, and after the execution of these agreements W. & J. Sloane became directly responsible to Ferguson and Hilbrand. Grissler & Sons were never entitled to receive the money that W. &. J. Sloane paid them for the work that had been done under the contract between W. & J. Sloane and Ferguson and Hilbrand, and the $12,000 paid to Grissler & Sons from W. & J. Sloane never was a part of the money due under the contract between W. & J. Sloane and Grissler & Sons but was money due under the new arrangement, by which a portion of the work that Grissler & Sons had agreed to do was to be done by the contractors selected by W. & J. Sloane, and to be paid to them, not by Grissler & Sons, but by W. & J. Sloane.

PATTERSON, P. J., concurs.