MERCHANTS NATIONAL BANK OF WORCESTER, Plaintiff, v.
GEORGE BAKER LONG et al., Defendants.

(Supreme Court, Erie Special Term, September, 1920.)

Municipal corporations — contract for public improvement —attachment — assignments — banks — payments — surety companies — liens — Lien Law, § 16.

Where the funds advanced by a bank to one having a contract for the erection of a city hospital are not shown to have been used by him in the performance of any part of the contract, and the bank for all that appears had nothing whatever to do with the contract, it does not come within the class for whose benefit the Lien Law was enacted. (P. 89.)

After warrants of attachment, aggregating $5,640.13, and interest, had been levied upon any and all debts due the contractor from the city, he made an assignment to plaintiff of all his claims and demands against the city by virtue of the hospital contract in the amount of $78,958.56 as collateral to his note discounted by plaintiff on the day of the assignment upon the face thereof and for his general indebtedness to plaintiff. Later he made another like assignment to the plaintiff for such general indebtednesses. Both assignments were filed in the offices specified in section 16 of the Lien Law in compliance therewith, and the second was also filed in the county clerk's office as specified in section 15 of the Lien Law. The contractor having made default in the performance of his contract, the city elected to complete the work and notified the surety on the contractor's bond to complete and perform the contract, which it did as surety and not as an independent contractor, and the city made payment to the surety company a sum representing the architects' estimates for work done by it in completing the contract, including the sum of $37,789.50, the amount of retained percentages as provided by the contract. In an action to determine the validity of various claims in relation to the contract price of the hospital, held, that plaintiff was not entitled to the amount paid by the city to the surety company, by virtue of the assignments from the contractor, and that the payments by the city to the surety company were proper and not in violation of the contract. *Edison Elec.*

*Ill. Co.* v. *Frick Co.*, 221 N. Y. 1, followed, which is also a conclusive authority against the contention of the attachment creditor that it should be paid the amount of its warrants of attachment.

ACTION to determine the validity of certain claims in relation to the contract price for the erection of a city hospital in the city of Buffalo.

Thomas C. Burke, for plaintiff.

George P. Keating, for defendant United States Fidelity and Guaranty Company.

Lawrence J. Collins, for defendant London Guaranty and Accident Company.

William S. Rann, corporation counsel, for city of Buffalo.

SEARS, J. In December, 1915, the city of Buffalo entered into a contract with the defendant Long for the construction of the city hospital for $407,324.86. The United States Fidelity and Guaranty Company then executed, as surety for Long, a bond in the sum of $191,750, to the city of Buffalo, conditioned upon the performance and completion by Long of his contract, and further conditioned upon Long well and truly paying for all material used and services rendered in the execution of the contract. This last mentioned condition of the bond was written pursuant to the provisions of the charter and ordinances of the city, and was an enforcible provision. *Wilson* v. *Webber*, 157 N. Y. 693, affg. 92 Hun, 466, on opinion below.

The contract provided that payments should be made to the contractor as the work progressed, upon

the architects' certificates, ten per centum of the esti-
mated cost of the work to be retained by the city until
the full completion of the contract. Long, in his appli-
cation for the surety bond, dated contemporaneously
with the bond, agreed that the surety company, as
surety on the bond, should be subrogated to all his
rights, privileges and properties as principal and
otherwise in said contract, and also thereby assigned,
transferred and conveyed to the surety company all
deferred payments and retained percentages, and all
moneys and properties that might be due him at the
time of any breach or default in his contract, or might
thereafter become due and payable to him on account
**of said** contract, or on account of extra work or mate-
rial. By October 11, 1917, twenty-one payments, aggre-
gating $327,954.50 had been made to Long by the city
of Buffalo upon architects' certificates that work had
been done to the amount of $364,205, of which latter
amount ten per centum or $36,420.50 was retained by
the city to await the final completion of the work, and
its acceptance by the city, as provided in the contract.
On November 9, 1917, the architects certified that work
to the extent of $377,895 had been done by Long, and
recommended a further payment to him of $12,609.50,
and the retention of $1,369, making the total retained
percentages $37,789.50. On the same day the board of
managers of the hospital approved the recommenda-
tion of the architects, and ordered the sum recom-
mended made, but such payment was never made,
doubtless because of the filing of notices of liens for
substantial amounts.

Later in November, the defendant London Guaranty
and Accident Company, in suits brought by it against
Long, levied two attachments aggregating $5,640.13
and interest, upon any and all debts due Long from the
city of Buffalo. On November 19, 1917, the contractor

Long executed and delivered to the plaintiff an assignment of all his claims and demands against the city of Buffalo by virtue of the city hospital contract, the unpaid balance being specified in such assignment as $78,958.56. Copies of the assignment were filed November 26, 1917, in the offices, respectively, of the second deputy commissioner of finance and the board of managers of the city hospital, these being the officers mentioned in section 16 of the Lien Law. This assignment was given as collateral to a promissory note of Long that day discounted by the plaintiff on the faith of the security, and also as general collateral for all other indebtednesses of Long to the plaintiff. A like assignment was given to the plaintiff by Long on May 20, 1918, as collateral for such indebtednesses, and this assignment was filed May 23, 1918, in the same offices, and also in the county clerk's office of Erie county, these being the offices specified in section 15 of the Lien Law. The indebtedness of Long to the bank is $82,922.93, interest being included to the day of the trial.

On December 6, 1917, the board of managers of the hospital adopted resolutions declaring Long in default on his contract, electing on the part of the city to perform and complete the work according to the contract, and notifying the defendant United States Fidelity and Guaranty Company, surety on the contractor's bond, to complete and perform the contract. The surety company thereupon, as surety for Long and not as an independent contractor, entered upon the completion of the contract and finally completed the same on November 21, 1918, at a total expense to it of $35,-458.32. In addition to this, the surety company paid to various persons who had furnished labor or material to Long on the execution of the contract, and for the payment of which it was obligated under its bond,

the sum of $56,247.20. Of this amount, $40,158.83 was paid to material men who had filed notices of liens. $14,738.37 was paid to lienors who had allowed their liens to expire; $1,350 to material men who had filed no notices of lien. The city of Buffalo paid to the surety company, from time to time, $26,740.68, being the architects' estimates of the amount of work done by it in completing the contract. The city also paid the surety company $12,609.50, being the payment ordered made to Long by the board of managers on November 9, 1917, and the further sum of $37,789, being the amount of retained percentages on November 9, 1917. The defendants surety company and city claim that these payments of $77,139.68 were rightfully made.

The defendant London Guaranty and Accident Company claims $5,640.13 of these moneys, besides interest, by virtue of its two warrants of attachment.

The plaintiff claims that it is entitled to the entire amount paid by the city to the surety company by virtue of its assignments from Long, and that the payments to the surety company were wrongful and in violation of its contract.

The plaintiff's claim based upon the assignment contained in the application may first be considered. Before the enactment of the statute now embodied in sections 15 and 16 of the Lien Law, an assignment of moneys due upon a building contract took precedence over the statutory liens of those furnishing labor and material. *Bates* v. *Salt Springs National Bank*, 157 N. Y. 322. This situation, with its hardship to this class, was altered by the enactment of the statutes now embodied in the sections of the Lien Law referred to. These sections each provide, the latter in relation to contracts for public improvements, and the other for other improvements, that no assignment of a contract

or of money, or part thereof, due or to become due, shall be valid until such assignment be filed in certain specified offices. The first assignment to the plaintiff was filed on November 26, 1917, in the offices specified in section 16, and the filing in all respects complied with the statute applicable to it. *Contractors Supply Co.* v. *City of New York,* 153 App. Div. 60.

The assignment to the plaintiff was never filed in the offices specified in section 16 of the Lien Law, and if that section is available to the plaintiff, no right can be claimed by the surety company by virtue of its earlier assignment.

The language of the opinion of the Court of Appeals in *Edison Electric Illuminating Co.* v. *Frick Co.,* 221 N. Y. 1, must be followed by this court. It was there stated that section 15 of the Lien Law (which in this respect is similar to section 16) was enacted for the protection of a definite class, namely, laborers and material men, and it was there held that it could not be taken advantage of by a judgment or attaching creditor.

The funds advanced by the plaintiff to the contractor in this case are not shown to have been used by the contractor in performing any part of his contract, and the plaintiff, for all that appears, had nothing whatever to do with the city hospital contract. It claims no equity in that respect. It does not come within the class for whose benefit the statute was enacted, as authoritatively determined in the *Edison* case. The plaintiff urges that the decision in the *Edison* case relates only to judgment and attaching creditors and not to assignees, and that the language in *Armstrong* v. *Chisolm,* 99 App. Div. 465, which case is cited in the *Edison* case, would include assignees, as well as those furnishing labor and materials, within its protection. But the language in *Armstrong* v.

*Chisolm* is, itself, *obiter,* the conflicting claims there being those of an assignee who had, himself, been a subcontractor, and of a general assignee for the benefit of creditors, and the effect of the statute between their conflicting claims was left undetermined. If the plaintiff in this case had furnished money to enable the contractor to complete his contract, a different question would be involved, and such an assignee might partake more of the nature of one who furnished labor and material than of a judgment or attaching creditor, but in the instant case the plaintiff has no equities superior to the creditor whose rights were adjudicated in the *Edison* case. The reasoning, therefore, of the decision in that case is conclusive upon this court.

Even if what has been said were not so, the defendant's claim must be sustained upon the doctrine of subrogation. If the city had, itself, completed the contract and made the same payments that the surety company made, there would have been nothing to which the plaintiff's assignment could attach. When the surety company, pursuant to the obligation of its bond, completed the contract and made the payments to lienors, instead of the city doing so, it stood in the city's place. *Federal Heating Co., Inc.,* v. *City of Buffalo,* 182 App. Div. 128, 138.

The case of *First National Bank* v. *City Trust, Safe Deposit & S. Co.,* 114 Fed. Repr. 529, is in all respects similar to the case at bar.

While the decision in *Prairie State Bank* v. *United States,* 164 U. S. 227, is not strictly in point, because the controversy there was between the surety on the contractor's bond and an assignee of the contractor whose assignment as such was invalid under the statute, but who claimed an equitable lien because the money which he advanced went into the performance

of the contract, nevertheless the principle there involved is the same as that involved in this case, for the court discussed the matter on the assumption that the assignee did have a valid equitable lien.

The authorities which are uniformly in accord with the position here taken (except those from the state of Washington as to moneys already earned by, and payable to, the contractor before the surety takes over the contract) are collected in two notes contained in 14 L. R. A. 457, and 1918–A. L. R. A. 937.

*Edison Electric Illuminating Co., supra,* is a conclusive authority against the contention of London Guaranty and Accident Company. The complaint must, therefore, be dismissed, with costs.

Complaint dismissed, with costs.