THE GLENS FALLS PORTLAND CEMENT COMPANY, Plaintiff, *v.* VAN WIRT CONSTRUCTION COMPANY and Others, Defendants.

Supreme Court, Warren County, April, 1928.

**Liens — mechanic's lien — lien upon State funds payable for construction of highway — defendant bank holds assignment and claims priority — assignment was not filed within ten days after execution as required by Lien Law, § 16 — assignment is void as to third persons — presumption that assignment was delivered on date thereof — validity cannot be sustained under rule of liberal construction (Lien Law, § 23) — laborer under hire by subcontractor is entitled to priority of payment (Lien Law, §§ 5, 12, 25, 56) — claim of subcontractor for hauling materials by motor truck is subject of valid lien — Lien Law, § 23, applicable.**

This is an action to foreclose a mechanic's lien upon State funds applicable to the payment of a contract for the reconstruction of a highway. The defendant bank claims priority under an assignment made to it by the principal contractor. The assignment was executed on August 7, 1926, but was not filed in the Comptroller's office and the State Highway Department within ten days after the date thereof as required by section 16 of the Lien Law, and it is, therefore, void as to the other lienors, but as between the parties themselves an assignment is good, even though never filed.

The date of acknowledgment of the assignment later than the date of the instrument does not affect the presumption that it was delivered on the date it bears.

An application of the rule of liberal construction, pursuant to section 23 of the Lien Law, cannot make the assignment valid.

A lien of an individual based upon a claim for wages, as laborer, under hire by a subcontractor, is entitled to priority of payment, the amount thereof to be first paid out of the funds in question in preference to all other liens. (Lien Law, §§ 5, 12, 25, 56.)

A claim by a subcontractor for the hauling by motor truck of sand, cement and stone for use on a public improvement is a claim for the contract price of work, labor and services that helped to form a part of the public improvement and is the subject of a valid lien. The liberal construction of the Lien Law provided for by section 23 thereof is applicable.

ACTION to foreclose mechanic's lien on State funds applicable to payment of contract price of public improvement.

*Williams, Imrie & Boyce* [*Henry W. Williams* and *Paul L. Boyce* of counsel], for Glens Falls Portland Cement Company, Jointa Lime Company and J. J. Fredella Company.

*Albert Ottinger,* Attorney-General [*Edward A. Gifford,* Deputy Attorney-General, of counsel], for the People of the State of New York.

*J. Edward Singleton* [*Charles B. Sullivan* of counsel], for National Bank of Glens Falls.

*Rogers & Sawyer,* for William M. Bronk and Queensbury Stone Company, Inc.

96    Glens Falls P. Cement Co. *v.* Van Wirt Const. Co.

Supreme Court, April, 1928.                    [Vol. 132

*James McPhillips* [*Thomas J. McCarthy* of counsel], for Earl Flint and Earl Flint, Jr.

*Joseph A. Murphy*, for Fuller & O'Brien Company, Truscon Steel Company and American Casting Company.

*James S. Kiley*, for Van Wirt Construction Company.

Brewster, J.   This is an action to foreclose plaintiff's mechanic's lien upon State funds applicable to the payment of the contract price of public improvements, viz., the reconstruction of Sandy Hill-Glens Falls State Highway No. 656, contracts Nos. 1522 and 3147.   The defendant Van Wirt Construction Company was the contractor.   It has executed its contracts, the State has approved the completion of the work and now holds $16,712.91 as due and payable on account thereof.   In addition there is a further sum of $11,659.16 and accrued interest on deposit in the defendant National Bank of Glens Falls, proceeds of sums collected from the State on account of said contracts and held by said bank in trust pursuant to an agreement between it, the plaintiff and defendants Jointa Lime Company and the Queensbury Stone Company and William M. Bronk preserving their respective equities therein and priorities of claims thereto as if said deposit was, instead, in the funds of the State whence it came.   It was established at the trial that plaintiff has a valid lien upon the aggregate of the aforesaid sums in amount $14,981.33, and interest, by virtue of its lien duly filed November 23, 1926, and that the following defendants have similar liens thereon duly filed on the date and being for the amounts herein next stated, viz.:

| | | |
|---|---|---|
| Jointa Lime Company | Nov. 23, 1926 | $4,704 74 and interest |
| Queensbury Stone Company | Nov. 26, 1926 | 1,253 83 and interest |
| William M. Bronk | Nov. 26, 1926 | 453 50 and interest |
| Fuller & O'Brien | Dec.  6, 1926 | 451 65 and interest |
| Truscon Steel Company | Dec. 13, 1926 | 3,750 44 and interest |
| Earl Flint, Sr. | Jan. 21, 1927 | 758 94 and interest |
| American Casting Company | Feb.  2, 1927 | 1,340 52 and interest |
| J. J. Fredella Company | Mch.  1, 1927 | 242 45 and interest |

There was also established the lien of Earl Flint, Jr., filed February 17, 1927, in amount $490, the amount whereof, however, is included in the aforesaid lien of Earl Flint, Sr.   The latter was a subcontractor and the defendant lienor Earl Flint, Jr., his employee, who has liened as aforesaid for his unpaid wages and claims priority thereto as a laborer.

The defendant National Bank of Glens Falls claims that by virtue of an assignment alleged to be dated September 14, 1926, and duly filed as required by law, said contractor duly assigned to

it all moneys due and to grow due upon said contracts to secure the payment to said assignee of an indebtedness of $20,000 owing to it by said assignor, now due and payable, and that, in consequence thereof, there must first be paid to it from the aggregate of the aforesaid sums the amount thereof with interest from July 1, 1926, before plaintiff or any of the defendant lienors may have resort thereto.

It has been established that the defendant National Bank of Glens Falls has additional security for the payment of the aforesaid indebtedness owing and due to it from said contractor, consisting of real estate mortgages on individual properties of one Lawton and one Van Wirt, the latter now deceased, which said persons formerly composed the copartnership herein later referred to, and also a chattel mortgage upon the machinery and plant of the defendant contractor; that this security is ample to discharge the aforesaid indebtedness owing to said defendant bank and was taken by it at different times all considerably prior to the aforesaid assignment. It further appears that the history of this $20,000 indebtedness is, briefly, as follows: There existed a copartnership of W. L. Lawton and D. E. Van Wirt known as Lawton & Van Wirt, engaged in the business, as contractors, of road construction and who were indebted to the defendant Merchants National Bank of Glens Falls in an amount of approximately $27,000 in 1922, and on a date in said year when it consolidated with the defendant National Bank of Glens Falls at which time the latter took over all the assets and assumed all the liabilities of the former. In the spring of 1924 one of said copartners, Van Wirt, incorporated the defendant Van Wirt Construction Company and shortly thereafter, the other copartner, Lawton, consenting thereto, a portion of the machinery and plant of said copartnership was transferred to the corporation and Lawton agreed, in an indefinite way, to help finance the latter as an indorser on its paper and signer on its bonds, all, in consideration of the transfer to him of certain corporate stock of said corporation, and the assumption by the latter of all the copartnership indebtedness, part of said arrangement being later evidenced by a writing, dated July 14, 1925, which, among other things, purports and is alleged to be an assumption by said corporation of all the liabilities of said copartnership, the part thereof owing to the National Bank of Glens Falls being therein particularly specified and payment thereof specifically stated. Between the date of this writing and July 1, 1926, said corporation paid $7,000 on account of this indebtedness thus assumed.

This case was tried before the late Justice ANGELL and he having

7

died prior to a decision thereof all the parties who appeared therein thereafter stipulated its submission to me for decision.

Upon the trial before me, plaintiff and various of the defendant lienors took the position:

*First,* that the aforesaid assignment to the National Bank of Glens Falls is void as to them in that (a) there was a fatal defect in its filing as required by law, and (b) that the defendant Van Wirt Construction Company's assumption of said copartnership's indebtedness was *ultra vires* and without consideration and accordingly invalidated said assignment as a security for the payment thereof; *second,* that if said assignment did afford a valid security, the said assignee must, in equity, be obliged to first exhaust its primary additional security before being permitted to realize upon the funds in question; *third,* that the claims of Earl Flint, Sr., and Earl Flint, Jr., are not lienable, or if so, not preferable as for labor.

Addressing the question as to whether the assignment to the defendant bank is valid, a review of the record discloses that on August 7, 1927, Dudley E. Van Wirt, president and majority owner of the defendant contractor, went to the defendant National Bank of Glens Falls, met there the latter's cashier and at said time and place there was made out, in quadruplicate, an assignment by said contractor to said bank of all amounts due and to grow due on the assignor's said contracts with the State, printed forms prepared and furnished by the State being employed for said purpose. In the printed portion of these forms the consideration is recited to be the sum of one dollar and additional moneys advanced and to be advanced by the assignee to the assignor for the construction of the aforesaid public improvements. Each of the quadruplicates was executed and intended as and for an original and a further detail with respect to each thereof is as follows: As to all of them — the date filled in on the blank line left for such purpose at the top of the form is "Aug 7, 1926;" and the signature at the conclusion thereof is "Van Wirt Construction Co Inc. by D. E. Van Wirt, President" or "Prest." The body of the assignment itself is the same in all of said originals except that in one of them the public improvement is described as the "Sandy Hill-Glens Falls" road and as to the other three the aforesaid words "Sandy Hill" were omitted and with the exception of one other discrepancy hereinafter referred to. On all of said printed forms, following the signature at the end of the assignment proper, were printed, first a blank form for certification by a notary public of an *individual* acknowledgment and this was followed by a similar blank form for a *corporate* acknowledgment. One of these originals evidenced by a photostatic copy, plaintiff's Exhibit 5, and a certified copy, defendants'

Exhibit 16, bears the notary's certificate of *individual* acknowledgment of D. E. Van Wirt, dated August 7, 1926, and bears the seal of said notary, and the *corporate* form of certificate of acknowledgment is likewise executed by said notary as to Dudley E. Van Wirt as president of the assignor corporation, dated September 14, 1926. The original of this assignment is also shown to have been filed and recorded by index in the office of the Department of Highways on September 16, 1926. The blank spaces in this form of the body of the assignment proper appear to me to be in the handwriting of Mr. Van Wirt, and his handwriting also appears to have filled in the blank spaces in the corporate certificate of acknowledgment, while the said spaces in the individual form bear the handwriting of the notary. Another of said assignments, a certified copy whereof was received in evidence, shows the execution thereof by both the individual and corporate certificates of acknowledgment by said notary on the date September 14, 1926. The original of this assignment was filed and recorded in the office of the State Comptroller on September 17, 1926, and the additional discrepancy in the body of the assignment proper, above referred to, occurs here and consists of describing the assignee in the first part thereof as " The Merchants National Bank of Glens Falls, New York," followed by the direction to pay the assigned moneys " to the said National Bank of Glens Falls, New York," the *name* just quoted consisting of handwriting in a blank space in said form, whereas, as to the other three originals the assignee in each instance was therein described as " The National Bank of Glens Falls, New York." The remaining two originals made out for the purpose of the files of the assignor and the assignee, respectively, the originals themselves being in evidence, defendants' Exhibits 20 and 21, are identical in that the blank spaces in the body of the instrument and in the individual and corporate certificates of acknowledgment are all in the handwriting of said notary, said certificates of acknowledgment all bearing the date September 14, 1926.

There was also received in evidence, as defendants' Exhibit 18, a certified copy of a further executed printed blank form of assignment, being a duplicate of the other aforesaid printed forms and made to " The National Bank of Glens Falls, New York," in all respects like the others with the exception of the one purporting to run to the Merchants National Bank of Glens Falls and this one, defendants' Exhibit 18, bears date September 24, 1926, and its form for certificate of individual and corporate acknowledgment were both executed like the others before the same notary, the date in both instances being September 24, 1926, and this latter form was filed in the Comptroller's office on September 27, 1926.

Supreme Court, April, 1928. [Vol. 132

I have thus detailed with reference to said executed forms of the assignment not merely for the purpose of illustrating the irregularity attendant upon the execution but rather in an endeavor to aid in a direction of the true bearing of the somewhat confusing and at times seemingly inconsistent testimony relating thereto. It appears that the said Van Wirt as president of said defendant contractor had as a borrower, during a period of upwards of two years previous to the assignment, negotiated many financial transactions with said bank through the agency of its said cashier and for about two years prior to 1924 had so transacted in other capacities and for a number of years prior to 1922 had likewise transacted in such other capacities with the Merchants National Bank of Glens Falls through the agency of the aforesaid cashier who formerly held such position there and until the purchase of the latter by the former bank. It appears that on August 7, 1926, Van Wirt, as president of the defendant contractor, went to the First National Bank of Glens Falls for the particular and stated purpose of making over to said institution an assignment of all moneys due and to grow due on account of his corporation's aforesaid contracts and, it being necessary to execute the same in quadruplicate that together he and said cashier, the latter being also a notary public, set about the same. That they both took part in the handwriting necessary to complete the forms is fairly evident. Apparently the thing was done in a hurry. Both of said persons had had considerable prior experience in similar transactions and, as laymen, seemed to possess a very fair knowledge of the statutory requirements. It seems that it was, to them, a mere routine of the law, for which, probably, they did not have much zest and, very probably, less appreciation of its importance as to consequence. At any rate the forms of the assignment were made out and all executed by the corporate assignor through the agency of its said president on August 7, 1926. At the time of the trial, Van Wirt was deceased but the cashier testified at length wherein, among other things, he stated, in substance, *that the assignment was executed by the defendant contractor corporation on August seventh; that that part of it was done, so that at that time he knew there was an assignment to the bank; that while it was later acknowledged on September 14, 1926, by Van Wirt as president of the corporation, still it was the same assignment that was so acknowledged and that no substantial change had been made therein between the time it was executed and later acknowledged.* It also appears that from and after August 7, 1926, one or more of said original forms of the assignments remained in the custody of the assignee and that such custody was continuous.

The date of an acknowledgment later than the date of the instru-

ment does not affect the presumption that it was delivered on the date it bears (*Crager* v. *Reis,* 16 Daly, 450), and a careful reading of the entire record convinces me that everything was done on August 7, 1926, which was requisite to a final and binding consummation of the assignment as between the parties thereto and that in the doing thereof it was the respective desires, intentions and purposes of the parties thereto to thus culminate it, and, accordingly, that it must be held that this time was the true date thereof. That is, the date when the assignment thus became efficacious as such between the parties, the same being the date it bears on the entire quartette of its forms.

The above conclusion seems to me wholly consistent with the true substance of the evidence of subsequent happenings. After the assignment had been executed it was arranged between the assignee and Van Wirt that the latter would attend to the filing thereof in the State offices. Some time later Van Wirt did take two of the four originals and deliver them to the proper State offices for filing. The date this occurred does not appear but that it was after August 7 and prior to September 14, 1926, is made manifest. It is also evident that the filing in the State offices was refused because they were presented more than ten days after their date and accordingly that they were in some manner returned to the assignee. Thereafter, on September 14, 1926, the blank forms of the certificate of corporate acknowledgment were filled in and executed on all four of the originals of said assignment, the executions being made by Van Wirt as president of the assignor and the assignee's said cashier who officiated as notary public. On this same day said cashier, as notary public, also executed the certificate of Van Wirt's individual acknowledgment on all of said originals except as to one, which, as aforestated, had been executed by him as notary on the preceding August seventh. This latter rather ludicrous and ineffectual apparent attempt at precaution seems immaterial except as it may cast some light on the intent of the parties when on August seventh the same certificate was executed on one of the originals. Though technically the individual acknowledgment amounted to a nullity, it seems to me that, logically, it cannot be well explained as an intended meaningless act. Doubtless on September fourteenth these laymen deemed it was necessary or at any rate the part of wisdom to thus further evidence on the remaining originals the existence of the assignment. If then they thus considered on said date such must have also been their aim and purpose on the former date, and accordingly there is further evidenced the requisite intent of the parties and the effectuality of their acts in consummating the assignment on August

seventh. The blank spaces in the body of the certificate of corporate acknowledgment executed on September fourteenth, which appears on one of the originals, being the one as to which the individual acknowledgment was taken on August seventh, is apparently filled in in the handwriting of said Van Wirt and, as to at least two of the others, in the handwriting of the said cashier and notary. The corporate seal of the defendant contractor assignor was not affixed to any of the certificates of corporate acknowledgment. Two of the originals were then, after September fourteenth, mailed to Albany to the proper State offices for filing, and, of these, the one mailed to the Comptroller's office was the one which therein first described the assignee as " Merchants National Bank of Glens Falls, New York." All these omissions and oversights further evidence the irregularities and bungling consequent upon busy laymen endeavoring to comply with simple though technical legal routine and, to my mind, further characterizes August seventh as the real and true date of the assignment by demonstrating the utter futility of what was done on September fourteenth as being effectual to supplant the former by the latter as the date thereof.

A purpose of the assignment was to secure payment of any future money advances from the assignee to the assignor, and it is significant that said cashier testified that after August seventh and before September fourteenth, to wit, on September 4, 1926, his bank loaned the assignor $5,000. True, it does not affirmatively appear just what the security therefor was, but in view of the financial standing of the borrower at that time, as shown by the record, the probabilities are that such loan was, in whole or in part, upon the security of the assignment of August seventh.

A point suggests itself that since the statute (Lien Law, § 16, as amd. by Laws of 1925, chap. 624) pronounces the assignment of August seventh invalid and unenforcible, it was legally no assignment at all so that we are forced to September fourteenth as the date thereof. This point, if well taken, would bring up for determination the validity of the assignment as dependent upon the manner of the filing that did take place, viz., in the highway office on September sixteenth as to one of the originals, in the Comptroller's office on September seventeenth as to the one of the originals running to the Merchants National Bank, supplemented by the fifth original dated September twenty-fourth and filed in the Comptroller's office, only, September twenty-seventh — all in 1926 — but, having concluded that August seventh is the real date, I do not deem it necessary to pass upon this, because, in my opinion, the invalidity pronounced by the statute applies only when the rights of third parties become involved and that as between the parties themselves the assignment was

good even though never filed. (*Van Kannel Revolving Door Co. v. Astor*, 119 App. Div. 214, 217; *Albany B. S. Co.* v. *Eastern B. & S. Co.*, 235 N. Y. 432, 436.)

The statute (Lien Law, § 16) is positive in its requirements that the assignment or copies thereof be filed in the offices of the State Highway Department and the Comptroller within ten days from the date thereof. Concededly, in view of the conclusions above expressed this was not done and the invalidity of the assignment as pronounced by said statute follows. It is true, as urged, that there is no evidence establishing that the defect in the filing *ipso facto* prejudiced the plaintiff or any of the other lienors, but I do not deem that this cures the defect which is otherwise fatal. *Contra,* the plain and positive requirements of the statute would be in large measure nullified.

The liberal construction required in general as to a remedial statute and of the statute in question in particular required by section 23 of the Lien Law, are also urged as a cure for the situation of the assignment in question. One answer to this is that the required liberal construction of a remedial statute means a construction in the interest of those whose rights are to be protected. (*Van Kannel Revolving Door Co.* v. *Astor, supra.*) It would seem that the general rule of construction is merely codified by section 23 of the Lien Law, and, since it has been held that the provisions of law embracing the requirements as to the filing of assignments such as the one in question were made only for the security of lienors or *subsequent* assignees or payees of orders drawn upon funds due or to grow due on the contract (*Armstrong* v. *Chisolm,* 99 App. Div. 465, 469), and not for the benefit of primary assignees (*Lasky* v. *State of New York,* 126 Misc. 360, 364), this thus excludes the assignee in the instant case from the class which section 16 of the Lien Law was designed to protect, and accordingly the liberal construction which is required cannot, for that reason, avail to alter the conclusion I have reached. " A liberal construction is that by which the letter of the statute is enlarged or restrained so as more effectually to accomplish the purpose intended." (*Weltman* v. *Posenecker,* 26 Civ. Proc. 238, 241.) Thus the liberality of construction which is ordained here rather tends to favor the position of the lienors. The whole matter in question is one of purely statutory creation and regulation and, logically, there arises the necessity of a strict compliance therewith. (*General Fireproofing Co.* v. *Keepsdry Construction Co.,* 225 N. Y. 180; *Steers Sand, etc., Co.* v. *Village of Long Beach,* 184 App. Div. 957.) I consider as particularly applicable to the situation disclosed relative to the filing of the assignment in the case at bar, the language of the

court in *Lemmer* v. *Morison* (89 Hun, 277, 279), viz., " it seems to me that a strict adherence to the letter of the law is more conducive to justice than a looser construction with the uncertainties which it would necessarily involve."

Having thus determined the invalidity of the assignment as regards plaintiff and the other defendant lienors, it is unnecessary to pass upon the other questions presented with reference thereto, and, accordingly, there only remains the contention respecting the validity and priority of the liens of the defendants Earl Flint, Sr., and Earl Flint, Jr.

Plaintiff's brief presents an argument that the claim of Earl Flint, Sr., is not lienable. Claimant was a subcontractor, and he having contracted with the principal contractor, the defendant Van Wirt Construction Company for the hauling, by motor truck, of sand, cement and stone for the aforesaid public improvement, it is argued that the substance of his claim was akin to freight charges and, as such, was thus neither for materials furnished nor labor performed within the meaning of the statute. While the lienability of railroad freight charges has been doubted ( *Upson* v. *United Engineering & Contracting Co.*, 72 Misc. 541, 553), claims of that nature seem to me to be readily distinguishable from claims based upon a contract price for hauling the precise material to the spot where, when placed, it forms the very entity of the public improvement. I am unable to make a fair or logical distinction between the act of hauling foreign material, either raw or manufactured, to a location where it later becomes a component part of the public improvement and the act of making fills with natural material that may be found more adjacent to the location of the improvement and which when placed also becomes a part thereof, or the act of hauling away from the location of the improvement material that must be dispensed with to make room therefor. Admittedly the claim of a subcontractor for the contract price for fills and cuts would be lienable. Here is an instance where the liberal construction of the statute provided for by section 23 of the Lien Law is properly applicable and, in my judgment, I keep within proper bounds in holding the claim of this subcontractor to be the subject of a valid lien in that it was for the contract price of work, labor and services that helped to form a part of the public improvement. (*Schaghticoke Powder Co.* v. *Greenwich & J. R. Co.*, 183 N. Y. 306.) Of course being a subcontractor who furnished the service the rendition whereof was not personal as to him, his claim is entitled to no preference as for labor.

The lien of Earl Flint, Jr., is based upon his claim for wages as a laborer under the hire of said subcontractor. There is due

the latter a sum in excess of the claim of this lienor. Were this not so, clearly, this lien for labor could not be preferred except as to the amounts due the subcontractor, for the reason that the lien of the subcontractor's laborer only attaches to the sum due or becoming due to his employer. (*Upson* v. *United Engineering & Contracting Co., supra,* 545–547.) But the plaintiff contends that the preference only applies as to the sum, if any, that is found applicable to the payment of the subcontractor as determined by the priorities of all the liens. True it is, in general, that the liability of principal to the subcontractor determines the right of the latter's laborer to recover from the fund due the former. However, I know of no authority that delimits the preference of such a lien for labor upon the contingency that the general fund due the contractor may be exhausted by payment of liens which are prior to that of the subcontractor. It has been held that the precedence of liens for labor performed for a subcontractor cannot be cut down or lessened by virtue of an offset or counterclaim existing in favor of the principal contractor against the subcontractor. (*Falvello* v. *City of New York,* 53 Misc. 468.) Claims for labor are especially favored by the provisions of the statute. These guaranties must be upheld and in my judgment they entitle the established lien of this day laborer, Earl Flint, Jr., to be first paid out of the funds in question. (Lien Law, §§ 5, 12, 25, 56, as amd. by Laws of 1916, chap. 507.)

Thereafter there should be paid from the remainder of said funds, to the extent that the same shall be sufficient therefor, the established amount of the liens of the plaintiff and of the other defendant lienors, with interest, in the order of their respective priorities as to filing, and such of said defendant lienors whose liens are not thus paid in full should have judgment against the defendant contractor, Van Wirt Construction Company, in the amount of such deficiencies, respectively, the established amount of the lien of Earl Flint, Sr., being reduced by the aforesaid amount of the lien of Earl Flint, Jr. Costs, payable out of the funds referred to, will be allowed as follows: One bill to the plaintiff and the defendant Jointa Lime Company with leave to plaintiff to apply for additional allowance, another bill to the defendant Queensbury Stone Company and William M. Bronk, another bill to the defendants Fuller & O'Brien, American Casting Company and Truscon Steel Company, and another bill to the defendants Earl Flint, Sr., and Earl Flint, Jr.

Settle decision in accordance with this opinion on notice to all parties and upon the day so noticed any party may submit requests to find.

Decreed accordingly.